*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0155P (6th Cir.)
File Name: 04a0155p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MARC E. BACON, et al.,
 *Plaintiffs-Appellants,*

 *v.*

HONDA OF AMERICA
MANUFACTURING, INC.,
 *Defendant-Appellee.*

No. 01-3520

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 99-00803—James L. Graham, Chief District Judge.

Argued: December 4, 2002

Decided and Filed: May 27, 2004

Before: BOGGS, Chief Judge; GUY, Circuit Judge; and
EDMUNDS, District Judge.[*]

---

[*] The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District of Michigan, sitting by designation.

---

## COUNSEL

**ARGUED:** Robert A. Steinberg, WAITE, SCHNEIDER, BAYLESS & CHESLEY, Cincinnati, Ohio, for Appellants. Mary Ellen Fairfield, VORYS, SATER, SEYMOUR & PEASE, Columbus, Ohio, for Appellee. **ON BRIEF:** Robert A. Steinberg, WAITE, SCHNEIDER, BAYLESS & CHESLEY, Cincinnati, Ohio, Robert F. Laufman, LAUFMAN & GERHARDSTEIN, Cincinnati, Ohio, John S. Marshall, LAW OFFICES OF JOHN S. MARSHALL, Columbus, Ohio, Michael J. O'Hara, O'HARA, RUBERG, TAYLOR, SLOAN & SERGENT, Covington, Kentucky, for Appellants. Mary Ellen Fairfield, James A. Wilson, VORYS, SATER, SEYMOUR & PEASE, Columbus, Ohio, for Appellee. Richard T. Seymour, LIEFF, CABRASER, HEIMANN & BERNSTEIN, Washington, D.C., for Amici Curiae.

---

## OPINION

---

BOGGS, Chief Judge. Plaintiffs, Marc Bacon and Terry Harden, brought this employment discrimination action against defendant Honda of America Manufacturing, Inc., seeking to represent a class of all current and former African-American employees at Honda's four manufacturing plants located in central Ohio. Plaintiffs appeal, asking for review of both the denial of class certification and the subsequent grant of summary judgment to Honda on all of plaintiffs' individual claims. Bacon and Harden allege that the company uses discriminatory procedures for promoting employees in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981, Ohio Revised Code § 4112.99, and Ohio common law. The district court correctly determined that Bacon and Harden failed to meet the

prerequisites for class certification and that they could not show that they were denied promotions for which they were eligible. For the reasons elaborated upon below, we affirm the decision of the district court in its entirety.

## I

On August 19, 1999, Bacon and Harden (plaintiffs), who were employed as "nonexempt" production associates (PAs) for Honda, filed a class action complaint, alleging that Honda engaged in a pattern or practice of discrimination against African-American employees by denying them promotions. Relying on both disparate impact and disparate treatment theories to prove liability, plaintiffs sought declaratory and injunctive relief, promotion to desired positions, back pay, and compensatory and punitive damages.

Honda has four manufacturing plants in central Ohio: Marysville Auto Plant (MAP); Marysville Motorcycle Plant (MMP); Anna Engine Plant (AEP); and East Liberty Plant (ELP). These four facilities have various purposes that range from manufacture of Accord and Acura automobiles, to production of Honda motorcycles, to building of engines and other components. In addition, Honda plants have quality departments, which are responsible for inspecting products coming off the line; purchasing departments; and various administrative offices, such as Human Resources. In all, there are thirty-nine departments at Honda.

Sixty percent of Honda's 12,700 employees are production associates, who are nonexempt[1] employees supervised by team leaders, the first supervisory level. Production staff share this secondary level of authority with team leaders. The next level of management is production coordinator, an

---

[1] Hourly wage earners entitled to overtime

exempt[2] position, who reports to an assistant manager or department manager, who in turn reports to a senior manager or plant manager.

In general, production associates may seek promotion to team leader,[3] but only in the department in which they are currently working. Furthermore, an employee becomes eligible for promotion only after meeting minimum requirements for time working both in the department and for Honda in general. In addition, he or she must have a strong attendance record, typically ninety-eight percent or above, and a disciplinary record that shows no counseling by a manager within the past twelve months. Past performance evaluations are also taken into account and some departments require the production associate to pass a trade test and/or to have completed a certain number of special projects. A team leader must be willing to work any shift or to travel. *See Bacon v. Honda of Am. Mfg.*, 205 F.R.D. 466, 471-72 (S.D. Ohio 2001) (giving detailed description of Honda's production facilities and corporate structure).

The motion for class certification was filed in September 2000, and an evidentiary hearing was held in December 2000. On March 7, 2001, the district court denied the motion for class certification, finding that: (1) plaintiffs did not satisfy the requirements of commonality, typicality, and adequacy of representation with respect to the disparate treatment claims under Fed. R. Civ. P. 23(a); (2) the predominance of monetary relief precluded certification of injunctive class under Rule 23(b)(2); (3) requirements for class certification under Rule 23(b)(3) were not met; and (4) Seventh

---

[2] Salaried position with no overtime rights

[3] Until 1992, production associates in MAP Assembly could also seek direct promotion to production staff, who are responsible for special projects and equipment-related tasks. After 1992, they had to become team leaders first.

Amendment concerns made bifurcation and certification of certain issues improper, or at least prevented that process from being the most fair and efficient way to litigate the claims. *Id.* at 490.

Honda moved for summary judgment on plaintiffs' individual claims. The plaintiffs filed a Rule 56(f) motion in response, requesting a revised discovery schedule and a new trial date. The district court denied the motion, although it allowed one additional deposition. On April 30, 2001, the district court granted summary judgment to Honda on the individual claims of Bacon and Harden. That order throughly addressed each of the plaintiffs' claims under both the disparate impact and disparate treatment theories. This appeal followed.

## II

### Class Action Certification

This court reviews denial of class action certification for abuse of discretion. *Alkire v. Irving,* 330 F.3d 802, 810 (6th Cir. 2003). In order for one or more litigants to represent all parties in a class, four prerequisites must be met: "(1) the class [must be] so numerous that joinder of all members is impracticable, (2) there [must be] questions of law or fact common to the class, (3) the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class, and (4) the representative parties [must] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In this case the district court conducted the mandatory "rigorous analysis [to confirm] that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 161 (1982). We agree with its conclusion that the disparate treatment claim fails the second, and the disparate impact claim the third, part of the Rule 23(a) test.

*Numerosity*

There is no automatic cut-off point at which the number of plaintiffs makes joinder impractical, thereby making a class-action suit the only viable alternative. *In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). However, sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1). 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 3:5, at 243-45 (4th ed. 2002). The facts of the case guide a court's determination that the class is sufficiently large to make joinder impractical. *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980). In this case, Bacon proposes a class of some 800 current and former African-American Honda employees, a number well beyond the point that joinder would be feasible. The requirement of Rule 23(a)(1) is met.

*Commonality*

In order to show disparate treatment, a potential class representative must show that the employer intentionally discriminated against a protected class and that there are questions of law or fact common to the class. *Falcon*, 457 U.S. at 162 (Burger, C. J., concurring in part). The Supreme Court has noted that class certification is "appropriate . . . [when] [i]t is unlikely that differences in the factual background of each claim will affect the outcome of the legal issue." *Califano v. Yamasaki* 442 U.S. 682, 701 (1979) (upholding class certification for litigation of an issue of interest to all social security beneficiaries). Variations in the circumstances of class members are acceptable, as long as they have at least one issue in common. *In re Am. Med.*, 75 F.3d at 1080 (citations omitted) (reversing a grant of certification because the putative plaintiffs had used many different models of a certain medical device, which had

produced a range of side effects, so that the malfunction could not be attributed to a common cause).[4]

Bacon and Harden were responsible for satisfying the court's concerns related to whether:

(i) the nature of the alleged unlawful employment practice genuinely had a class-wide impact;
(ii) employment practices affecting the class were uniform or diverse, given factors such as size of the work force, number of plants involved; range of employment conditions, occupations, and work activities; geographic dispersion of the employees and extent of intra-company employee transfers;
(iii) members' treatment would be likely to involve common questions;
(iv) relevant employment and personnel policies and practices were centralized and uniform; and
(v) similar conditions prevailed throughout the time period covered by the allegations.

*Stastny v. S. Bell Tel. and Tel. Co.*, 628 F.2d 267, 277 (4th Cir. 1980) (citing *Harriss v. Pan Am. World Airways, Inc.*, 74 F.R.D. 24, 41 (N.D. Cal. 1977)); *Newberg*, § 24:21, at 133-34 (requiring a specific showing of underlying facts that might raise an inference of a common pattern or practice through allegations of specific incidents of discrimination, supporting affidavits, or evidence at the class certification hearing).

---

[4] The district court analyzed commonality separately for the disparate treatment and disparate impact claims. The court generously concluded that the clear instances in which Honda's facially neutral policies would not affect the putative class in a uniform manner could be ignored because they were "differences [that] are not critical to a finding of commonality on the disparate impact claim." *Bacon,* 205 F.R.D. at 478. For the purposes of clarity in this opinion, we assume, without deciding, that the district court was correct.

Bacon and Harden are attempting to certify a class of all African-American workers at Honda's four Ohio facilities over the past twenty years who were involved in the company's promotion system. They assert that "company-wide subjective practices" and "similar promotion criteria" across departments satisfy the requirements of Rule 23(a)(2). Conclusory allegations and general assertions of discrimination are not sufficient to establish commonality. *Falcon,* 457 U.S. at 157. Plaintiffs failed to show how hourly wage earners and salaried employees would have the same interests, especially in terms of promotion procedures in which at least some of the nonexempt employees would be competing to join the ranks of exempt management. They also did not demonstrate how differing promotion criteria for jobs as diverse as welding, accounting, and engine-building could discriminate against each African-American employee. Nor did they elaborate on why this court should disregard the objective criteria for promotion and find that all African-American employees were harmed by managers "who made subjective decisions."

We hold that plaintiffs have failed to produce sufficient evidence to convince us that the district court abused its discretion in finding that the factors enumerated above had not been met. We view with skepticism a class that encompasses 1) both workers and supervisors; 2) production-line workers and those in administrative positions; 3) workers in four plants with different production capabilities; and 4) workers and supervisors spread over more than 30 departments. Because class members have such different jobs, we find it difficult to envisage a common policy regarding promotion that would affect them all in the same manner.

The only way Bacon and Harden can place such a diverse group under one umbrella is to demonstrate that Honda operated in a discriminatory fashion against all the workers in the class "through an *entirely* subjective decision-making process." *Falcon*, 457 U.S. at 159 n.15. If they can make this

showing, then they can establish commonality and typicality. However, Honda's decision-making is not completely subjective: it also uses objective criteria for promotion, such as time in service, attendance records, and test scores.[5] Bacon and Harden rebut this by citing another Supreme Court case that held that mixed systems for determining promotions would "generally have to be subjective in nature." *Watson v. Ft. Worth Bank & Trust*, 487 U.S. 977, 989-90 (1988).

We do not accept the argument that Honda's decision-making process is entirely subjective because, as a matter of fact, it is not. Plaintiffs cannot avoid the heavy lifting of showing eligibility for class certification by conflating two exceptions to separate rules for adjudicating discrimination cases. An entirely subjective decision-making process may, theoretically, allow different kinds of employees to be in the same class – a question of class membership (*Falcon*). For the entirely separate purpose of establishing a *prima facie* case of disparate impact, mixed objective and subjective standards may be considered to be purely subjective (*Watson*). *See* 42 U.S.C. § 2000e-2(k)(1)(B)(i).

The two exceptions are not interchangeable, however. Plaintiffs are trying to demonstrate eligibility for class membership, which is governed by the "entirely subjective" requirement in *Falcon*. They must prove that the potential members of the class actually have something in common: they are subject to random decision-making. As an entirely separate matter, the Court has been cognizant of the difficulties inherent in proving discrimination and therefore set a relatively low bar for establishing a *prima facie* case. *See, e.g., Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981) ("The burden of establishing a prima facie case of disparate treatment is not onerous."). Therefore, counting mixed criteria as subjective furthers the goal of

---

[5] See discussion below in Section III, p. 21, rejecting the assertion that Honda subjectively applied these criteria.

making sure that valid claims get to a jury. The constructive subjectivity in *Watson* cannot substitute for the actual and complete subjectivity required for the exception in *Falcon* because the cases deal with two unrelated legal issues: class membership and the elements of a *prima facie* case. We hold that the *Falcon* requirement is not met because the plaintiffs have not shown that the wide range of class members are all subject to the same, exclusively-subjective, decision-making process.

Bacon and Harden rely on *Senter v. General Motors Corp.*, but the class in that case was more circumscribed: the class consisted of "all black employees who, during a period between July 2, 1965 and September 1, 1971, were denied an opportunity for promotion to [salaried] supervisory positions [from hourly positions] although possessing seniority and qualifications equivalent to white employees who were so promoted." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 (6th Cir. 1976). In contrast, plaintiffs here want to certify a class of employees who worked at Honda over a period of twenty years in both hourly and salaried positions with different qualifications and varying levels of seniority. *Senter* focused on one transitional step in the career path of the plaintiffs over a six-year period: the jump from hourly wage earner to salaried employee. In contrast, plaintiffs are challenging Honda's practices for all promotions, regardless of department or starting point in the company hierarchy, and regardless of comparability in objective qualifications. Therefore, *Senter* can be distinguished from the facts of this case and does not compel us to find that the commonality factor has been met.

*Typicality*

Assuming, arguendo, that Honda's promotion procedures had a disparate impact on African-American employees, we hold that neither Bacon nor Harden is a typical member of the class. The typicality requirement is designed "to limit the class claims to those fairly encompassed by the named

plaintiff's claims." *Gen. Tel. Co.*, 446 U.S. at 330. In order to meet the typicality requirement, the plaintiffs must show that their "injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff." *In re Am. Med.*, 75 F.3d at 1082 (quoting 1 Newberg, *supra*, at § 3-76). However, their personal choices, independent of any practices by Honda that have a disparate impact, have rendered them ineligible for promotion for the majority of their time at the company. Therefore, Honda can assert legitimate non-discriminatory reasons, or business reasons, for not promoting them, which would not be available as an explanation for discrimination against other African-American employees.

Honda's career track on the production line starts with production associates. The next rung up the ladder is team leader or production staff. From July 1994 to July 1999, 92% of promoted PAs were elevated to team leader or production staff in their home departments. The remaining 8% were promoted to a different type of work, such as quality control or administration. In 1992, MAP Assembly, where both plaintiffs worked for the majority of their tenure, changed its policy to no longer allow promotion directly from production associate to production staff; a line worker would have either to request promotion to team leader, transfer out of the department with the attendant one-year wait for eligibility, or seek promotion to administration or the quality department.

The position of team leader is not inherently desirable: it requires availability for overtime and imposes added responsibility for a marginal increase in pay. Therefore, advancement through transfer to a parallel track is desirable, but, like any career shift, involves overcoming an experience deficit in comparison to other candidates. Both named plaintiffs in this case chose to avoid seeking advancement through becoming a team leader and concentrated on acquiring positions in the quality department or administration. Because this strategy circumscribed their

chances for advancement, we hold that they are not typical of African-American workers at Honda.

Bacon started working at Honda in 1988 and was first eligible for promotion in April 1990. He was eligible for 13 months until May 1991, when he transferred to a new department (MAP assembly). In 1993, when there were three promotions to team leader, Bacon was not eligible for consideration because he did not have the 100% attendance required for the position and had not completed an overtime special project (New Honda (NH) Circle) within the last 24 months, another prerequisite. From 1994 - 96, he did not express interest in a production team leader position and so was not eligible for consideration, and he did not take the required test in 1996. He transferred to a new department (MMP Assembly) in 1997, rendering him ineligible for promotion until February 1998. In April 1998, the promotion process was changed: to be considered for elevation to team leader, an employee had to submit a pool interest form, which Bacon never did.

In order to be considered for a position in a non-production department, an employee had to fill out a career interest application (CIA), which was valid for one year. Bacon filled out CIAs in 1991 (during most of which time he was not eligible for any promotion), 1994, 1996, 1997, and 2000. Selection for interviews under this program was done by blind assessment of the application form. Bacon was selected for interviews on several occasions, including three times in the purchasing department, but not selected because other candidates had stronger educational backgrounds and job-related experience. Four African-Americans and twelve Caucasians were promoted through this process from 1993 - 2000.

Harden was hired in 1988 and became eligible for promotion in March 1990. He expressed interest in promotion to team leader or production staff, which remained a possibility for 15 months, until May 1991, when he

requested, and was authorized, to transfer to another department (MAP assembly), making him ineligible for promotion for the next 12 months. In 1993, Harden indicated a desire for promotion to production staff, which was no longer an option due to the change in policy in MAP Assembly, or to the quality department. He was not considered for promotion to team leader because he did not indicate interest; furthermore, he also did not meet the qualification of 100% attendance or participation in overtime special projects required for consideration.

Harden rejected the most obvious path to advancement and was not eligible to be considered for team leader until April 1996, when he indicated that he wanted to take the qualification test. He received a score of 63 on that exam, some ten points below the cutoff, and therefore was not eligible for a team leader position; he did not take the exam in 1997. In April 1998, the promotion process was changed and to be considered for elevation to team leader, an employee had to submit a pool interest form, which Harden did not do. In 1999, he did not see the notification, posted on September 21, of the October 8 deadline for submitting the requisite interest form to take the qualification test. He heard about the possibility from his wife around October 2, but was out on bereavement leave starting October 3 and did not return until October 21, when Honda determined that it was too late to sign up for the October 25 test. Harden joined this lawsuit on February 18, 2000.

Therefore, largely as a result of his personal promotion preference, Harden was eligible for promotion to team leader for only 15 months out of the ten years at issue in this case. He expressed interest in, and pursued, other avenues of advancement, most notably inclusion in the pool for employment in the quality department. Because he was pursuing a different career track, he was unable to compete with other candidates who had directly relevant experience. Harden was so often ineligible for promotion, particularly for the position of team leader that he was most likely to get, he

cannot reasonably represent the interests of those who may have consistently applied for promotion and been turned down for discriminatory reasons.

In sum, to qualify for class certification, all the parts of Rule 23(a) must be met. On their class certification claim based on disparate treatment, plaintiffs cannot demonstrate a common issue of fact or law applicable to every member of the proposed class. On their disparate impact claim, plaintiffs cannot show that the facially neutral policies regarding promotion affected them in a typical way because they opted out of the most common and reliable path of advancement. The plaintiffs cannot meet the requirements of Rule 23(a) (2) and (3) and the district court correctly denied class certification.

We therefore do not consider the Rule 23(a)(4) issue of whether the plaintiffs' attorneys could fairly represent the class due to their involvement in parallel litigation against Honda. In light of the posture of this case, it would be inappropriate for us to address the split between the Second and Fifth Circuits concerning whether monetary damages can be sought in a Rule 23(b)(2) class action suit, and we do not decide any aspect of that question in this opinion. *Compare Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998) *with Robinson v. Metro N. Commuter R.R.*, 267 F.3d 147 (2d Cir. 2001). We therefore turn to the plaintiffs' individual claims of discrimination under theories of disparate treatment and disparate impact.

### III

**Individual Claims**

The district court granted summary judgment to Honda on Bacon's and Harden's claims of individual disparate treatment and disparate impact. We review a grant of summary judgment *de novo*. *Pinney Dock & Transp. Corp. v. Penn Cent. Corp.*, 838 F.2d 1445, 1472 (6th Cir. 1988).

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

### Disparate Treatment

The plaintiffs' claim of disparate treatment is analyzed under the well-known rubic established in *McDonnell Douglas. McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973). The same basic pattern is used in a claim concerning racial discrimination in promotion; specifically, each plaintiff must show that: (1) he is a member of a protected class; (2) he applied for and was qualified for a promotion, (3) he was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions at the time the plaintiff's request for promotion was denied. *Nguyen v. City of Cleveland,* 229 F.3d 559, 562-63 (6th Cir. 2000). The district court provided a detailed analysis demonstrating how failure to establish a *prima facie* case warrants summary judgment on the individual claims and we need not belabor the issue, other than to affirm a few critical points of law.

### Pattern-or-Practice Method of Proof

The district court found, based on the weight of authority outside the Sixth Circuit, that the pattern-or-practice method of proving discrimination, in which the plaintiff shows that the company had a policy of discriminating against a protected class, is not available to individual plaintiffs. *See, e.g.*, *Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 761 (4th Cir. 1998), *vacated on other grounds*, 527 U.S. 1031 (1999); *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 711 (2d Cir. 1998). All interpret the Supreme Court's discussion of the pattern-or-practice method of proof as being limited to class actions or suits by the government. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 359-60 (1977). Although plaintiffs argue on appeal that the district court

improperly analyzed their pattern-or-practice basis for class certification, they have not specifically challenged the court's finding that the pattern-or-practice method of proof is not available to them on their individual claims.

We therefore hold that the pattern-or-practice method of proving discrimination is not available to individual plaintiffs. We subscribe to the rationale that a pattern-or-practice claim is focused on establishing a policy of discrimination; because it does not address individual hiring decisions, it is inappropriate as a vehicle for proving discrimination in an individual case. *Lowery*, 158 F.3d at 761 (observing that "[t]he Supreme Court has never applied the *Teamsters* method of proof in a private, non-class suit charging employment discrimination. Rather, the Court has noted that there is a 'manifest' and 'crucial' difference between an individual's claim of discrimination and a class action alleging a general pattern or practice of discrimination.") (citing *Cooper v. Fed. Reserve Bank of Richmond,* 467 U.S. 867, 876 (1984)). This reading has also been adopted by at least one district court in this circuit. *Herendeen v. Mich. State Police.* 39 F. Supp. 2d 899, 905 (W.D. Mich.1999). However, pattern-or-practice evidence may be relevant to proving an otherwise-viable individual claim for disparate treatment under the *McDonnell Douglas* framework.

### Exemption from Application Requirement

As demonstrated above, Bacon and Harden were not eligible for promotion for a sizable percentage of their tenure at Honda, and/or did not apply to be in the available promotion pools, as required in part two of the test for a *prima facie* case. They now argue that they should be exempt from such a requirement because, given the discriminatory nature of promotions at Honda, such an application would have been futile. Although it is true that failure to apply for a promotion may be excused, the circumstances must reveal "overwhelming evidence of pervasive discrimination in all aspects of [the employer's] internal employment practices,

and [that] . . . any application would have been futile and perhaps foolhardy." *Harless v. Duck,*, 619 F.2d 611, 617-18 (6th Cir. 1980) *(quoted in Kreuzer v. Brown*, 128 F.3d 359, 364 n.2 (6th Cir. 1997)). Plaintiffs cannot come close to meeting this standard. Not only did other African-Americans receive some of the promotions for which the plaintiffs applied, but Bacon's supervisor expressed willingness to help him in his application to the purchasing department. Nor was the application process arduous; in most cases, all the plaintiffs had to do was fill out a form expressing interest. It is not unreasonable to expect plaintiffs to make such a minimal effort to preserve their rights.

Plaintiffs also rely on the holding in *Mauro v. Southern New England Telecomms., Inc.*, 208 F.3d 384, 386-87 (2d Cir. 2000), that the application requirement did not apply when the plaintiff expressed interest in promotion to a class of positions but was unaware of specific positions because they were not posted. *See also Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1022 (6th Cir. 2000) (recognizing exception to application requirement when employer does not notify employees of available promotion and does not provide formal mechanism for expressing interest in promotion). Although each production department only posted its promotion opportunities internally, the requirement of one-year's tenure in the department meant that all those eligible to respond had access to the announcement. Although it is true that submitting an application to the quality department and non-production pools was not tantamount to applying for a specific job, managers conducted a blind review of all eligible candidates, not knowing name, background, or racial profile. Those who were deemed qualified were then put in a pool and interviewed as vacancies occurred. Therefore, we see no basis for waiving the general requirement that a plaintiff must have applied for a position in order to assert that he was denied the position because of discrimination.

*Disparate Impact*

Disparate impact analysis is used when an employer's facially neutral policy adversely affects a protected class. *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971). To show disparate impact, it is not necessary to show an intent to discriminate, but the plaintiff must demonstrate a connection between the challenged practice and the resulting disparities between protected and non-protected classes. *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 657 (1989) (clarifying that the "plaintiff must demonstrate that it is the application of a specific or particular employment practice that has created the disparate impact under attack"). Generally disparate impact analysis is used in a class action, but it may also form the basis of an individual claim. *See Gantt v. Wilson Sporting Goods Co.,* 143 F.3d 1042, 1048 (6th Cir. 1998) (ADEA context). The district court determined that basic requirements of standing mean that an individual plaintiff must show that the facially neutral policy resulted in discrimination that resulted in personal injury. *Coe v. Yellow Freight System, Inc.*, 646 F.2d 444, 451 (10th Cir. 1981). *See also Robinson v. Polaroid Corp.*, 732 F.2d 1010, 1016-17 (1st Cir. 1984); *Carpenter v. Bd. of Regents of Univ. of Wis. Sys.*, 728 F.2d 911, 915 (7th Cir. 1984). Plaintiffs have not challenged this conclusion.

In *Warth v. Seldin*, the Supreme Court explained the basic principles of standing, which mandate that a plaintiff have a "personal stake in the outcome of the controversy" and that the plaintiff must have suffered some real or threatened injury. *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (quotation marks and citation omitted). From these basic principles, it is natural for us to hold that an individual plaintiff arguing a disparate impact theory must show that the challenged policy directly disadvantaged him in some fashion. *See Bowdish v. Cont'l Accessories, Inc.*, No. 91-1548, 1992 WL 133022, at *5 (6th Cir. June 12, 1992) (noting an "individual plaintiff in an employment discrimination case must present some evidence that demonstrates that his or her *individual*

discharge was the result of discrimination") (unpublished opinion) (citing *Gilty v. Village of Oak Park,* 919 F.2d 1247, 1253 n.8 (7th Cir.1990)).

Bacon and Harden contend that Honda's requirements for attendance, time in department, testing, and overtime activities in determining eligibility for promotion disproportionately disadvantage African-Americans. Whatever the validity of those disparate impact claims, and the statistical evidence is complex and heavily disputed, we agree with the district court that the plaintiffs cannot show that the policies injured them personally, and therefore their claim must fail.

*Attendance*

Plaintiffs' expert found that more African-Americans than other employees were noted as being late or absent. Plaintiffs claim discrimination in "excusing" the absences, resulting in more African-Americans being ineligible for promotion due to Honda's stringent attendance requirements. Plaintiffs overlook the fact that the basic attendance records are generated by computer time clocks. Employees may expunge the record of tardiness or absence by applying personal or vacation time to make up for the missing time. We have no explanation for the fact that fewer African-Americans chose to use their vacation time to make up for being late or unexpectedly absent, but see nothing in the record to indicate that disparity is the result of discrimination.

The only possible theory would be that Honda somehow induced blacks to be late more often than other employees in order to force them to deplete their vacation time until the point that they would opt to keep the attendance deficit on their records. Plaintiffs do not allege that the computers were somehow programmed to mark African-Americans as late, however, and we cannot think of any other way in which Honda even theoretically could create this difference.

Once the plaintiff establishes that a facially neutral policy has an adverse effect on a protected class, the burden of production and persuasion shifts to the employer to show that the challenged practice is a business necessity. *United States v. City of Warren*, 138 F.3d 1083, 1091-92 (6th Cir. 1998). Therefore, even if we were to find a connection between the attendance policy and promotion opportunities for minority workers, Honda certainly has a legitimate business reason for demanding near-perfect attendance from its employees. Plaintiffs could rebut this by offering an alternative that would not have the discriminatory impact but would nevertheless serve the employer's legitimate interests. *Wards Cove*, 490 U.S. at 660. Bacon and Harden have not offered another system for making sure that the production line is always sufficiently staffed.

Nor have Honda's attendance requirements injured the plaintiffs; both men have generally maintained attendance records that would not have prevented them from being promoted. Bacon was counseled for not meeting the required 98% attendance level in 1997 but not at the managerial level. An employee is ineligible for promotion for one year after a managerial-level counseling, but a similar session with a lower-level supervisor does not preclude advancement. Even if Honda management abused the system by disproportionately counseling African-Americans at the managerial level, neither Bacon nor Harden was subjected to this treatment and therefore cannot raise it as part of an individual disparate impact claim.

*Time in Department*

Honda requires every employee to work at the company for 18 months before being eligible for promotion. In addition, an employee must give up the right to promotion for 12 months after transferring from one department to another. Plaintiffs' statistical expert found a disparity between African-Americans and other employees in number of transfers and therefore they posit that this is a discriminatory

requirement designed to keep African Americans off the promotion roster. We agree that a documented record of *forced* transfers of African-American employees would raise an inference of discrimination, but there is no evidence of that. The vast majority of transfers were requested by employees themselves, including both Bacon and Harden, in order to get a more desirable shift or position themselves for advancement. Employees involved in departmental reorganizations or assigned to special projects kept their departmental seniority. Dr. McClave, plaintiffs' statistical expert, did not distinguish between requested and other transfers in his analysis. The record gives no explanation for why African Americans might be more likely to request transfer, but that is a question for Honda management rather than this court. In terms of percentage, the difference between the percentage of African Americans in Honda's workforce (7.8%) and the percentage of African Americans requesting transfer (8.69%) does not diverge markedly.

The statement in plaintiffs' brief that "[t]ransfers were used to disqualify Bacon and Harden from certain promotions" is misleading. Appellant Br. at 17. Both men requested transfer, knowing the consequences in terms of promotion eligibility. Honda has a legitimate business reason for requiring familiarity with procedures and skills of a particular department before allowing promotion within that department. Under the burden-shifting pattern cited above, Bacon and Harden would have to propose a different method for ensuring familiarity with department techniques and procedures for those eligible for promotion, which they do not do. The periods of ineligibility for promotion resulting from their requested transfers cannot be attributed to discrimination on the part of Honda.

*Testing*

At certain periods and in certain departments, Honda required testing to demonstrate sufficient knowledge to be eligible for promotion. Bacon and Harden allege that this

testing resulted in discrimination. However, nothing in the record demonstrates that the tests resulted in a widely divergent pass rate for blacks and whites or that the subject matter of the tests was not business-related. Without such a showing, there is no basis for a disparate impact claim. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425 (1975); *United Black Firefighters Ass'n v. City of Akron,* No. 94-3961, 1996 WL 125043, at *2 (6th Cir. 1996) (unpublished opinion). Furthermore, Bacon passed the test that he took. Harden received a score of 63 on the team leader test, at a time when the cutoff for consideration was in the mid-70s, but passed other assessments to be eligible for promotion into the quality department.

The brief submitted on behalf of Bacon and Harden also alleges that they were "prevented from taking eligibility tests." Appellant Br. at 53. This is an overstatement. Harden missed the October 8, 1999 deadline to express interest in the October 25 sitting of the test. He was on bereavement leave, starting after October 3, and returned a few days before the test was administered. As a matter of business judgment, it might have been better for Honda to show some flexibility given Harden's difficult personal circumstances, but it was under no obligation to ignore the fact that Harden had not complied with the deadlines, which he knew about even before his sister's death. The record is vague on Bacon's reasons for not sitting for the test; in his deposition he merely states that he "has not had the opportunity to do so." If Honda had actively prevented him from doing so, his deposition testimony would have been more specific.

*NH Circles*

Neither Bacon nor Harden participated actively in the overtime special projects that Honda regarded as the final prerequisite for consideration for promotion. The two may have had entirely legitimate reasons for doing so; in fact, Bacon at one point was attending college classes at night and therefore was not available. Nevertheless, Honda had a

legitimate business reason for gauging commitment to the company by willingness to make an extra, compensated effort. In fact, the team leader position required availability for overtime, so this policy was an effective way of making sure that an employee was actually willing to put in extra hours. An employer cannot be held liable for disparate impact if a legitimate business policy results in workforce disparities. *Ward's Cove*, 490 U.S. at 659. Plaintiffs fail to suggest another equally effective system for Honda to allow employees to signal their willingness to put in the extra effort that makes them strong candidates for additional responsibility and compensation.

## IV

**Discovery**

In January 2001, in response to Honda's motion for summary judgment, the plaintiffs sought further discovery on the merits of plaintiffs' individual claims under Federal Rule of Civil Procedure 56(f). Plaintiffs argued, as they do on appeal, that discovery had been focused on, and limited to, class certification issues. The district court denied the motion, stating that the discovery and scheduling orders "never indicated that the parties should not be proceeding with the merits discovery as well as the class certification discovery, with the exception of the magistrate judge's discovery order of October 20, 2000, which states that the parties should not 'be conducting discovery that is unrelated to the motion to certify during November and up to December 18.'" Plaintiffs were nonetheless permitted to depose Rick Gardner, the only individual who plaintiffs specifically asked to depose, and to supplement their response to the motion for summary judgment. The district court also observed that much of the voluminous record submitted at the class certification hearing also related to the individual claims of the plaintiffs.

We review a denial of discovery for abuse of discretion. *Hahn v. Star Bank,* 190 F.3d 708, 719 (6th Cir. 1999). Given that the record in this case exceeds 3,800 pages and that the elements of Bacon and Harden's individual claims are directly related to their class action claims, we are hard put to imagine what further discovery would have accomplished in this matter.

## V

It is unfortunate when two qualified minority workers with strong work evaluations spend a significant number of years at a company and do not advance. This situation may require the considered attention of Honda management as a business matter. However, based on the record before us, the district court did not err in its rulings. Therefore we **AFFIRM** the district court's denial of class certification and grant of summary judgment to Honda.