OPINION
{¶ 1} Plaintiff-appellant, Collie L. Brown, Jr., ("appellant"), appeals from the decision of the Franklin County Court of Common Pleas granting the motion for directed verdict filed by defendant-appellee, Worthington Steel Company, Inc. ("appellee"). Appellant filed suit against appellee asserting claims under Title VII of the Civil Rights Act of 1964 and Ohio Revised Code 4112.02 alleging that his employer engaged in unlawfully discriminatory practices on the basis of race.[1]
 {¶ 2} Appellee is a wholly owned subsidiary of Worthington Industries, Inc., which operates nine plants in five states. In 1985, appellant was hired by a sister company of appellee. Appellant transferred to appellee's employ during the late 1980's, in approximately 1988 or 1989. Appellant initially held a general laborer position, then was transferred to a forklift operator position, and was then transferred, upon request, to the shipping department. In October 2001, appellant filed this suit asserting that appellee failed to promote him based on his race.
 {¶ 3} In the trial court, appellant moved for partial summary judgment on the issue of appellee's liability. Appellee also filed a motion for summary judgment arguing that it had a formal mechanism for expressing interest in positions at the plant and that appellant had failed to apply for any promotions. The trial court denied both motions and found that genuine issues of material fact existed. The matter proceeded to a jury trial. At the close of appellant's case, appellee moved for directed verdict. The trial court granted appellee's motion for directed verdict finding that no reasonable jury could find in appellant's favor. Appellant timely appealed.
 {¶ 4} On appeal, appellant raises the following three assignments of error:
ASSIGNMENT OF ERROR NO. 1.
IN A CIVIL JURY TRIAL, THE TRIAL COURT COMMITS PREJUDICIAL ERROR WHEN IT DIRECTS A VERDICT IN FAVOR OF THE DEFENDANT AT THE CLOSE OF PLAINTIFF'S CASE AS TO THE THEORY OF DISPARATE IMPACT WHEN A PRIMA FACIE CASE HAS BEEN PRESENTED BY THE PLAINTIFF, SPECIFICALLY THROUGH THE "INEXORABLE ZERO"; (sic) THEREFORE, THE JUDGMENT OF THE TRIAL COURT MUST BE REVERSED.
ASSIGNMENT OF ERROR NO. 2.
IN A CIVIL JURY TRIAL, THE TRIAL COURT COMMITS PREJUDICIAL ERROR WHEN IT DIRECTS A VERDICT IN FAVOR OF THE DEFENDANT AT THE CLOSE OF PLAINTIFF'S CASE AS TO THE THEORY OF DISPARATE TREATMENT WHEN A PRIMA FACIE CASE HAS BEEN PRESENTED BY THE PLAINTIFF, THEREFORE THE JUDGMENT OF THE TRIAL COURT MUST BE REVERSED.
ASSIGNMENT OF ERROR NO. 3.
IN A CIVIL ACTION IT IS PREJUDICIAL ERROR WHEN A TRIAL COURT DENIES THE PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE ISSUE OF LIABILITY WHERE NO GENUINE ISSUES OF MATERIAL FACT REMAIN, THEREFORE THE JUDGMENT OF THE TRIAL COURT MUST BE REVERSED.
 {¶ 5} A motion for directed verdict will be granted only after construing the evidence most strongly in favor of the party against whom the motion is directed and finding that, upon any determinative issue, reasonable minds could only reach a conclusion adverse to such party.Swiggum v. Ameritech Corp. (1999), Franklin App. No. 98AP-1031. The court does not engage in a weighing of the evidence or evaluate the credibility of witnesses. Rather, the issue is solely a question of law and we review the trial court's grant of a directed verdict de novo. Albaugh v. City ofColumbus, Franklin App. No. 02AP-687, 2003-Ohio-1328, citing TitaniumIndustries v. S.E.A., Inc. (1997), 118 Ohio App.3d 39. Thus, the question before us, is did appellant present sufficient material evidence at trial on his claim for racial discrimination to create a factual question for the jury? We hold that he did not.
 {¶ 6} As set forth in R.C. 4112.02(A), it shall be an unlawful discriminatory practice:
For any employer, because of the race, color, religion, sex, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.
 {¶ 7} Appellant offers two theories of discrimination upon which recovery can be had, disparate impact and disparate treatment. Under his first assignment of error, appellant argues that a directed verdict was inappropriate because he established a prima facie case of discrimination based on the disparate impact theory. However, before we begin our analysis of appellant's disparate impact claim, we note that appellant specifically argues that he is relieved of his burden to produce meaningful statistical analysis under the inexorable zero theory.[2]
However, this exception is granted only in pattern and practice cases, which this case clearly is not, and is not available to individual plaintiffs. Bacon v. Honda of Am. Mfg., Inc. (C.A.6, 2004), 370 F.3d 565. To the extent that appellant is asking this court to extend the inexorable zero theory to cases involving individual claims of discrimination, we decline. Thus, we will analyze appellant's disparate impact claim under the traditional analysis.
 {¶ 8} Disparate impact discrimination involves employment practices that are facially neutral in their treatment of different groups, but fall more harshly on one group. Albaugh, supra, ¶ 11. Disparate impact analysis is intended to make sure that employers do not use neutral decision-making mechanisms that in fact work to eliminate a greater portion of otherwise-qualified protected group members than they do members of other groups. Phillips v. Cohen (C.A.6, 2005), 400 F.3d 388,389. Proof of discriminatory motive is not required under this theory of discrimination. Id., citing Hazen Paper Co. v. Biggins (1993),507 U.S. 604, 409, 113 S.Ct. 1701; Watson v. Fort Worth Bank and Trust
(1988), 487 U.S. 977, 986-987, 108 S.Ct. 2777, citing Griggs v. Duke PowerCo. (1971), 401 U.S. 424, 91 S.Ct. 849. In a disparate impact case, a plaintiff must begin by identifying the specific employment practice that is challenged and that is allegedly responsible for any observed statistical disparity. Id., citing Wards Cove Packing Co, Inc. v.Antonio (1989), 490 U.S. 642, 109 S.Ct. 2115., at 656, quoting Watson, at 994. "`Once the employment practice at issue has been identified, causation must be proved; that is, the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused' the alleged discrimination." Id., quoting Watson, at 994. Once the plaintiff sets forth the prima facie case, the defendant-employer has the burden to show a business justification for the practice. Id. If the defendant succeeds in demonstrating business necessity, the plaintiff has the opportunity to show that another policy or practice, without a similarly undesirable effect, would also equally serve the employer's legitimate business interests. Id.
 {¶ 9} To succeed on his claim under a disparate impact theory, appellant must begin by identifying the employer's specific facially neutral policy that adversely affects him as a member of a protected class. Bacon, supra. Examples of specific employment practices include such things as the use of performance reviews, awards, and disciplinary actions as a factor in promotions, screening tests, and height and weight requirements. In the case sub judice, appellant has failed to identify and/or present evidence regarding a specific facially neutral employment practice or policy, in terms of promotions, that disparately impacts appellant as a member of a protected class. In fact, it appears from the record that this issue was not addressed at all during the course of the trial. While, this alone is fatal to appellant's claim, we note that appellant has also failed to offer sufficient statistical data in support of his disparate impact claim.
 {¶ 10} Once an employment practice has been identified, causation must be proved. In cases involving promotion policies, the relevant inquiry is comparing the number of protected group members benefiting from promotions with the number seeking them; this figure is then contrasted with the corresponding ratio for the non-protected group. Phillips,
supra, 399. Appellant must "offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused" the alleged discrimination. Albaugh, supra, at ¶ 11. Here, the only statistical evidence, submitted via testimony at trial, is that no African-Americans have been promoted at Worthington Steel during the time frame at issue. However, appellant has not offered any standard deviation analysis of this data, or any analysis whatsoever, relevant to this disparate impact claim. "Without proper analysis, these statistics are meaningless." Id. at ¶ 22, citing Wingfield v. United TechnologiesCorp. (D.Conn. 1988), 678 F.Supp. 973, 981; Foster v. Tandy Corp
(C.A.4, 1987), 828 F.2d 1052, 1057 (holding that raw statistics devoid of any context which relates those statistics to the alleged discriminatory practice are of minimal probative value).
 {¶ 11} This court is aware that statistical evidence is not to be considered in a vacuum as the only evidence allowing a plaintiff to meet his prima facie case. However, appellant does not even provide statistical evidence, rather, appellant provides only the one fact that no African Americans were promoted during the time of his employ at Worthington Steel. As noted by the trial court, "[n]o statistical standard deviation analysis was offered into evidence. So one is left to wonder what that deviation might have been, if any, and its significance to the facts and circumstances in this case." (Dec. 14, 2004 Decision, at 5.) There was no testimony regarding the number of African Americans employed at Worthington Steel during the time frame at issue, nor was there any evidence regarding the number of management positions that were available, the number of African Americans that applied for these positions and their qualifications with respect to the qualifications of those that were employed in those positions. In fact, the record reflects that during the last few years prior to the trial of this matter, Worthington Steel was actually downsizing and reducing the number of supervisors at the Worthington Steel plant. "In Columbus Steel, as I said, we went from 15 supervisors down to three. There weren't added people going into those jobs." (Feb. 10, 2005 Tr. at 91.)
 {¶ 12} Small or incomplete data sets and inadequate statistical techniques are insufficient to establish a plaintiff's prima facie case,Watson, at 996-997, and appellant presents no other evidence in support of his claim. Consequently, appellant has not made a prima facie case of disparate impact discrimination. See Austin v. Memphis Light, Gas Water Division (C.A.6, 1997), No. 96-6582, 1997 U.S. App. LEXIS 30540. Therefore, we find that the trial court properly concluded that no reasonable jury court find in appellant's favor on his disparate impact claim. Accordingly, we overrule appellant's first assignment of error.
 {¶ 13} In his second assignment of error, appellant argues that the trial court erred in directing a verdict in favor of appellee on appellant's disparate treatment discrimination claim. In a disparate treatment claim, liability depends on whether or not a protected trait actually motivated the employer's decision. Albaugh v. City of Columbus
(1999), 132 Ohio App.3d 545, 550. This may be proven through direct or indirect evidence. Samadder v. DMF of Ohio, Inc., (2003),154 Ohio App.3d 770. Since appellant did not offer any direct evidence of discrimination, appellant must establish disparate treatment through indirect evidence. In the context of a failure-to-promote claim, a plaintiff seeking to use indirect evidence must demonstrate that: (1) he is a member of a protected class; (2) he applied for and was qualified for a promotion; (3) he was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions at the time the plaintiff's request for promotion was denied. Johnson v. United Parcel Service, Inc. (C.A.6, 2004), 117 Fed.Appx. 444, 450, citing Nguyen v. City of Cleveland
(C.A.6, 2000), 229 F.3d 559, 562-563.
 {¶ 14} It is undisputed that appellant is a member of a protected class. However, appellant has not offered sufficient evidence regarding the remaining three elements. Appellant must present evidence that the employer's actions, "if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." Vredevelt v. GEOGroup, Inc. (C.A.6, 2005), No. 04-1435, 2005 U.S. App. LEXIS 16321, citing Hazen, supra. "In short, an inference of unlawful discrimination does not arise, as a matter of law, merely because an employer has chosen between two qualified candidates." Id.
 {¶ 15} Appellant has not offered any evidence that he applied for any position, despite the fact that appellant was aware of job postings via the company's bulletin board and the company's intranet and e-mail systems. Appellant testified that while at different points in time throughout his employment at Worthington Steel he expressed an interest in advancing in the company to numerous people, he only recalled two or three positions that he saw in which he was interested. He was interested in one specific supervisor position until he discovered that the position would pay less than what he was currently earning, therefore, he turned it down. Regarding the other positions, appellant testified that he did not submit any resumes or apply for these positions.
 {¶ 16} Appellant argues that he is not required to establish that he applied for any positions because appellee did not have a formal job posting procedure and because it would have been futile for him to apply. However, appellant's arguments regarding this issue are flawed for several reasons.
 {¶ 17} First, the evidence presented at trial indicates that there was a policy at Worthington Steel that constituted a formal job posting procedure. According to the testimony at trial, including that of appellant, job openings have been posted on bulletin boards throughout the plant since at least 1998 or 1999. Additionally, job postings were sent to employees via the company's e-mail system and job postings were available to employees on the company's intranet system. However, there is no evidence that appellant applied for any of these positions. The only evidence that marginally supports an argument that he applied for a position is appellant's testimony in which he testified that he believes that his wife sent a resume in for him, but he was unable to recall for what job posting that was. Additionally, appellant rejected participation in appellee's operations training program because he felt he did not "need" it.[3] Moreover, appellant testified that he did not apply for some positions because it would have required him to relocate out of state. Further, as stated previously, appellant turned down a supervisory position at one time because the position paid less than what appellant was currently earning.
 {¶ 18} Second, and more importantly, the record is void of any evidence regarding the alleged futility in applying for a position. There is nothing in the record establishing, or even suggesting, that it would have been futile for appellant to apply for any position at Worthington Steel.
 {¶ 19} Finally, even if appellant did establish that he applied for a position, or that he was not required to, appellant has failed to establish that he was qualified for any of the positions he sought and that a less qualified, non-protected individual was hired instead.
 {¶ 20} Appellant contends that he believes that less qualified individuals were hired into positions for which he was qualified. However, appellant provides only this bare assertion with no actual facts or personal knowledge as to the qualifications and/or experience of the other candidates, or even to what qualifications and experience was required for said positions. While appellant listed twenty-plus persons that he believes were less qualified and/or less educated than him that had been promoted since appellant received his college degree in 1996, appellant testified that he knew nothing about these individuals' actual qualifications for the positions or promotions for which they held.
 {¶ 21} Because the record is void of any evidence regarding the last two elements of a disparate treatment discrimination claim, we find that a directed verdict on this claim was appropriate and that the trial court did not err in so granting. Accordingly, appellant's second assignment of error is overruled.
 {¶ 22} In his third assignment of error, appellant argues that the trial court erred in denying his motion for partial summary judgment as to the issue of liability. The essence of appellant's argument in this assignment of error, is that based on his "unrefuted statistics," that no African Americans have been promoted at Worthington Steel during the time in which appellant has been in their employ, the trial court erred in denying summary judgment in favor of appellant as to appellee's liability. This argument, however, consists of the same flaw as that in his first assignment of error. Again, appellant bases his argument on the inexorable zero theory and its proposition that when a defendant-employer fails to refute a plaintiff's statistical evidence, there is an inference that each hiring and promotion decision was affected by illegal motivation. However, as discussed above, the inexorable zero theory is not applicable to this case as this case is not a pattern and practice case, rather this case concerns an individual claim for discrimination. As we stated previously, to the extent that appellant is asking this court to extend the inexorable zero theory to individual claims of discrimination, we decline. Accordingly, we overrule appellant's third assignment of error.
 {¶ 23} For the foregoing reasons, we overrule appellant's three assignments of error and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Brown, P.J., and Klatt, J., concur.
[1] This action was originally filed in United States District Court for the Southern District of Ohio. The federal court dismissed appellant's Title VII claims with prejudice and remanded this matter to the Franklin County Court of Common Pleas for resolution of the state law claims. Therefore, only the state law claims are before us.
[2] The practice of excluding all individuals of a particular ethnic group is referred to as the phenomenon of the inexorable zero theory. SeeAss'n Against Discrimination in Employment, Inc. v. City of Bridgeport
(C.A.2, 1981), 647 F.2d 256.
[3] The operations training is a program where appellee trains its own employees to assume management positions within the company.