PEÑA v INGHAM COUNTY ROAD COMMISSION

Docket No. 231482. Submitted January 8, 2003, at Lansing. Decided February 11, 2003, at 9:00 A.M. Leave to appeal sought.

Joseph G. Peña brought an action in the Ingham Circuit Court against the Ingham County Road Commission, his employer, alleging that workplace harassment based on his race or national origin resulted in a hostile work environment and that he was subjected to adverse employment action as retaliation for filing a complaint under the Civil Rights Act, MCL 37.2101 *et seq.*, about the harassment. The court, Carolyn Stell, J., denied the defendant's motion for summary disposition and, following a jury trial, entered judgment on a jury verdict and award of present and future damages for the plaintiff. The defendant appealed.

The Court of Appeals *held*:

1. The trial court did not abuse its discretion in precluding the defendant from introducing any evidence of abusive or vulgar language used by the plaintiff or any evidence of his confrontations with coworkers and with one member of the public. Evidence of use of vulgar and profane language in the workplace by a plaintiff claiming a hostile work environment can be relevant to determining the existence of a hostile work environment, depending on the type of language, its frequency, and the context in which it is stated. Here, however, the trial court correctly determined that it would be more prejudicial than probative to allow the defendant to present evidence of the plaintiff's minimal use of profanities and two instances of heated interactions with coworkers and one member of the public because such evidence could have caused the jury to conclude that it was permissible to engage in illegal workplace harassment or discrimination.

2. The trial court erred in denying the defendant's motion for summary disposition of the retaliation claim. A prima facie case of retaliation can be established with evidence that the plaintiff was engaged in protected activity, that this was known by the defendant, that the defendant took an employment action adverse to the plaintiff, and that there was a causal connection between the protected activity and the adverse employment action. An adverse employment action typically takes the form of an ultimate employ-

ment decision, such as termination of employment or demotion. Here, the plaintiff's allegations that he was investigated by the defendant for worker's compensation fraud, that he was isolated at work, and that a supervisor ridiculed him for filing his lawsuit do not establish that the defendant took an adverse employment action in retaliation for the plaintiff's lawsuit.

3. The defendant, by not moving for remittitur or a new trial and by failing to object to the plaintiff's request for jury instructions on future damages, has failed to preserve for appellate review the claim that the award of future damages was excessive. There was sufficient evidence in the record to support the award of future damages.

Affirmed in part, reversed in part, and remanded for entry of an order dismissing the retaliation claim.

1. CIVIL RIGHTS — CIVIL RIGHTS ACT — EMPLOYMENT DISCRIMINATION — HARASS-MENT — EVIDENCE.

Evidence of harassing conduct by a plaintiff claiming a violation of his civil rights because of a hostile work environment, if such conduct is not similar to that complained of by the plaintiff, is irrelevant and not admissible in the plaintiff's action (MCL 37.2101 et seq.).

2. CIVIL RIGHTS — CIVIL RIGHTS ACT — EMPLOYMENT DISCRIMINATION — RETALIATION.

A prima facie case of employer retaliation against an employee's filing of a complaint under the Civil Rights Act is established with proof that the employee was engaged in protected activity, that this was known by the employer, that the employer took an employment action adverse to the employee, and that there was a causal connection between the protected activity and the adverse employment action (MCL 37.2701[a]).

3. CIVIL RIGHTS — CIVIL RIGHTS ACT — EMPLOYMENT DISCRIMINATION — RETALIATION — ADVERSE EMPLOYMENT ACTION.

An adverse employment action taken by an employer in retaliation for an employee's filing of a complaint under the Civil Rights Act typically takes the form of termination of employment or demotion (MCL 37.2701[a]).

*Fett & Linderman, P.C.* (by *James K. Fett* and *Marla A. Linderman*), for the plaintiff.

*Michael R. Kluck & Associates* (by *Michael R. Kluck*) for the defendant.

Before: MURRAY, P.J., and SAWYER and FITZGERALD, JJ.

MURRAY, P.J. Defendant appeals of right from the final judgment entered in favor of plaintiff on his discrimination and retaliation claims brought under the Civil Rights Act (CRA), MCL 37.2101 *et seq.* We affirm in part, reverse in part, and remand.

### I. MATERIAL FACTS AND PROCEEDINGS

Because of the limited nature of the issues properly presented on appeal, we provide the reader with only a brief summary of the material facts and proceedings that led to the jury verdict. Plaintiff commenced his employment with defendant in October 1987. Plaintiff continues to be employed by defendant and is currently a class-four highway worker.

The amended complaint filed by plaintiff asserts that he was subjected to a hostile work environment on the basis of his race or national origin, to disparate treatment, and to retaliation. Specifically, plaintiff claimed that from the inception of his employment he has been on the receiving end of numerous derogatory and discriminatory remarks directed at his national origin, and that when he opposed this alleged harassment (including by the filing of this lawsuit), defendant took adverse employment action against him. Defendant sought pretrial dismissal of plaintiff's claims on the basis that a hostile work environment did not exist, and plaintiff had not suffered an adverse employment action. Defendant's motion for summary disposition was denied by the trial court.

At trial, plaintiff presented testimony regarding the repeated national-origin slurs that had been directed at him over the course of his thirteen years of

employment. Specifically, plaintiff and other employees testified that plaintiff was called a "wetback," "spic," "beaner," "f—ing Mexican" and "pickle plucker" by coworkers and supervisors alike on an almost daily basis throughout the course of his employment. Defendant did not deny that these words were at times utilized by its workers. However, defendant presented testimony that this was simply good natured "shop talk," that plaintiff had good working relations with the supervisors and coworkers he now complains of, and that at some point the slurs ended.

The jury apparently accepted plaintiff's version of the facts, because it returned a verdict finding defendant liable for both a hostile work environment and for retaliating against plaintiff.[1] The jury awarded $650,000 in "damages to date" while awarding him an additional $650,000 for "future damages." The verdict form did not differentiate between the amount awarded for the harassment claim and the amount awarded for the retaliation claim.

On appeal, defendant argues that the trial court committed three errors that require reversal, namely: (1) that it was denied a fair trial by the trial court's decision to exclude from evidence plaintiff's own workplace conduct; (2) that plaintiff's retaliation claim should have been summarily dismissed because plaintiff had not suffered an adverse employment action; and (3) that the trial court should have set aside the future damages award because it was excessive in light of the evidence and was punitive in

---

[1] Plaintiff previously withdrew his claim of disparate treatment discrimination.

nature. For the forthcoming reasons, we agree with defendant that plaintiff's retaliation claim should have been summarily dismissed. Defendant's remaining arguments, however, do not garner our support.[2]

II. ANALYSIS

A. THE TRIAL COURT'S EVIDENTIARY DECISION

"A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion." *Barrett v Kirtland Community College*, 245 Mich App 306, 325; 628 NW2d 63 (2001). Establishing an abuse of discretion is, however, quite difficult, for an abuse will only be found "when the decision is 'so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.' " *Dacon v Transue*, 441 Mich 315, 329; 490 NW2d 369 (1992), quoting *Spalding v Spalding*, 355 Mich 382, 384-385; 94 NW2d 810 (1959). Because such an abuse will usually occur only in extreme cases, *Barrett, supra* at 325, it is only stating the obvious to say that an abuse of discretion will normally not be found when addressing a close evidentiary question. *Hilgendorf v Saint John Hosp & Medical Ctr*, 245 Mich App 670, 707 n 49; 630 NW2d 356 (2001), quoting *People v Bahoda*, 448 Mich 261, 289; 531 NW2d 659 (1995), quoting *People v Golochowicz*, 413 Mich 298, 322; 319 NW2d 518 (1982) (" ' "The decision upon a close evi-

---

[2] Defendant has not appealed the trial court's denial of its motion for summary disposition on the hostile work environment claim, nor has it argued that there was insufficient evidence presented to the jury on that issue.

dentiary question by definition ordinarily cannot be an abuse of discretion." ' ").

Before the originally scheduled trial date, plaintiff filed a motion in limine. By way of that motion, plaintiff sought to exclude evidence that he was short-tempered, and that he had conflicts with members of the public and with his coworkers. During oral argument on the motion, plaintiff indicated that through his motion in limine he was not seeking to preclude evidence that he utilized ethnic or racial slurs in the workplace. Instead, plaintiff argued that any evidence of coworker confrontations, or abusive and vulgar (but not discriminatory) language should be excluded. After hearing arguments, the trial court entered an order allowing defendant to introduce any evidence that plaintiff utilized racial or ethnic slurs, but precluding defendant from introducing any evidence of abusive or vulgar language utilized by plaintiff or any evidence of his coworker or citizen confrontations, unless plaintiff asserted at trial that he was unlawfully denied a promotion.

Citing both state and federal law, defendant argues that the trial court should not have prevented it from showing to the jury that plaintiff utilized foul language and made threats of harm to coworkers and to one member of the public. In particular, defendant claims support for this proposition in *Radtke v Everett*, 442 Mich 368; 501 NW2d 155 (1993), *Henson v Dundee*, 682 F2d 897 (CA 11, 1982), *Scusa v Nestle USA Co Inc*, 181 F3d 958 (CA 8, 1999), and *Morgan v Hertz Corp*, 542 F Supp 123 (WD Tenn, 1981). None of these cases, however, supports the specific argument made by defendant. Rather, they support the trial court's decision.

In *Radtke*, our Supreme Court held that in determining whether a work environment is illegally hostile, it must be gauged by a reasonable person's standard viewing the "totality of circumstances." *Radtke, supra* at 394. This does not mean, as defendant would have us hold, that *everything* affecting plaintiff's employment is relevant and admissible in a harassment case. Rather, we have previously held that what is relevant is evidence that plaintiff himself engaged in the type of conduct similar to that at issue in the case. In *Grow v W A Thomas Co*, 236 Mich App 696, 706; 601 NW2d 426 (1999), we held in a sexual harassment case that evidence of the plaintiff's own sexual conduct at work was relevant in determining whether the conduct complained of (also sexual in nature) was "unwelcome" or "hostile":

> Defendants presented evidence in support of their claim that plaintiff often engaged in sexual conduct herself. Plaintiff's own conduct was therefore relevant to the question whether Arguette's alleged acts were "unwelcome." See, e.g., *Balletti v Sun-Sentinel Co*, 909 F Supp 1539, 1547 (SD Fla, 1995) ("Where a plaintiff's action in the work place shows that she was a willing and frequent participant in the conduct at issue, courts are less likely to find that the conduct was 'unwelcome' or 'hostile.' ") [.] However, plaintiff's participation in sexual behavior or comments, standing alone, does not necessarily defeat a claim of hostile work environment. To the contrary, it is merely a factor to consider when determining whether the conduct or comments at issue were "unwelcome."

Accordingly, in a hostile work environment claim, a plaintiff's engaging in conduct similar to that complained of is relevant to a proper determination whether the plaintiff was subjected to an unlawfully hostile work environment. *Grow, supra.* This same

conclusion has been reached by the federal courts that have considered this issue under Title VII of the Civil Rights Act of 1964, 42 USC 2000e *et seq.* See, e.g., *Gross v Burggraf Constr Co*, 53 F3d 1531, 1537-1538 (CA 10, 1995); *Hocevar v Purdue Frederick Co*, 223 F3d 721, 729-730 (CA 8, 2000); *Burns v McGregor Electronic Industries, Inc*, 989 F2d 959, 962-963 (CA 8, 1993); *Barta v Honolulu*, 169 FRD 132 (D Hawaii, 1996); *Herchenroeder v Johns Hopkins Univ Applied Physics Laboratory*, 171 FRD 179, 182 (D Md, 1997). The rationale of these cases is a logical one: if the plaintiff himself sees fit to utilize discriminatory language or commit discriminating acts in the workplace, the jury should be apprised of that fact to determine how that plaintiff would reasonably perceive his work environment when he is the recipient of the same or similar conduct. See *Meritor Savings Bank, FSB v Vinson*, 477 US 57, 69; 106 S Ct 2399; 91 L Ed 2d 49 (1986) ("While 'voluntariness' in the sense of consent is not a defense to such a claim, it does not follow that a complainant's sexually provocative speech or dress is irrelevant as a matter of law in determining whether he or she found particular sexual advances unwelcome. To the contrary, such evidence is obviously relevant.").

The trial court adhered to this rule in deciding plaintiff's motion in limine. As noted, the trial court ruled that defendant could present evidence that plaintiff engaged in the type of behavior at issue in this case. Thus, defendant was free to inform the jury that plaintiff utilized such terms as "wetback" and "Mexican" when referring to others in the workplace.

Defendant asserts, however, that the trial court should have also allowed evidence of plaintiff calling

one of his supervisors a "fat f—," and that plaintiff, on several occasions, exhibited an aggressive attitude with his coworkers and the public. We conclude that the trial court did not abuse its discretion in excluding such evidence as being more prejudicial than probative. MRE 403. Although it is true that the events in the workplace are to be reviewed under the "totality of the circumstances," *Radtke, supra,* defendant has offered no case that holds that a jury *must* be allowed to consider a plaintiff's aggressive demeanor or use of foul language at work when that aggressiveness does not include conduct similar to that at issue in the case, i.e., it does not include any indication that plaintiff, while at work, engaged in discriminatory conduct himself.

In the cases dealing with vulgar and rude language utilized by a plaintiff bringing a hostile work environment action—most of which seem to fall in the category of sexual harassment—courts have concluded that the weight or admissibility of the statements depends on the circumstances of each particular case. Judge Posner, writing for the court in *Galloway v Gen Motors Source Parts Operations,* 78 F3d 1164, 1167 (CA 7, 1996), abrogated on other grounds, *Nat'l Railroad Passenger Corp v Morgan,* 536 US 101; 122 S Ct 2061; 153 L Ed 2d 106 (2002), held that the use of foul language by a plaintiff and its effect on the work environment at issue in the case depends in large measure on how and when the language is used. As a result, and depending on the circumstances of each case, sometimes the plaintiff's use of foul language, when coupled with rather nonoffensive language used by the defendant, causes there to be no dispute about the lack of a hostile work environment, see *Gleason v*

*Messirow Financial Inc*, 118 F3d 1134, 1146 (CA 7, 1997) (affirming summary judgment), and *Hocevar v Purdue Fredrick Co*, 223 F3d 721, 736-737 (CA 8, 2000) (also upholding summary judgment), while in other cases the evidence is of such a character that it should be submitted to the jury for resolution. *Horney v Westfield Gage Co*, 211 F Supp 2d 291, 308-310 (D Mass, 2002). What must be focused on, however, is a plaintiff's conduct at work, not conduct outside work. *Burns v McGregor Electronic Industries, Inc*, 989 F2d 959, 963 (CA 8, 1993). We agree with the foregoing decisions and conclude that evidence of a plaintiff's use of vulgar and profane language (as opposed to discriminatory language dealt with earlier) in the workplace can be relevant to determining the existence of a hostile work environment if the circumstances so warrant, i.e., it would depend on the type of language, its frequency, and the context in which it is stated.

Turning to the case at hand, although evidence that plaintiff called his supervisor a "fat f—" presents a close question because his supervisor responded by calling plaintiff a derogatory and discriminatory name, we believe that under the facts of this particular case, the trial court set reasonable guidelines with regard to what was more prejudicial than probative, MRE 403. The trial court's ruling allowed the jury to know plaintiff had used national-origin slurs in the workplace so it could determine if similar language was "unwelcome" or created a "hostile" discriminatory atmosphere, yet kept defendant from bringing forward a few incidents that perhaps showed that plaintiff occasionally used profanities. Evidence of plaintiff's minimal use of profanities, and that he had

a couple of heated interactions with coworkers and one with the public over thirteen years of employment, could have caused the jury to conclude that it was permissible to constantly utilize language prohibited by law in the workplace (discriminatory statements), as was shown to have occurred in this case, simply because plaintiff occasionally utilized profanities that, though inappropriate, are not necessarily illegal. The trial court decided such evidence was more prejudicial than probative, and although we may have ruled differently in the first instance, we cannot conclude that such a decision was an abuse of discretion. *Hilgendorf, supra.*

### B. PLAINTIFF'S RETALIATION CLAIM

Defendant also asserts that the trial court should have dismissed plaintiff's retaliation claim because plaintiff failed to create a genuine issue of material fact with regard to whether he was subjected to an adverse employment action by the time the motion was heard by the trial court. On this point, we agree with defendant.

In *Kelly-Stehney & Assoc, Inc v MacDonald's Industrial Products, Inc,* 254 Mich App 608, 611-612; 658 NW2d 494 (2003), we set forth the standard of review for our Court to apply when considering the propriety of the grant or denial of a motion for summary disposition under MCR 2.116(C)(10):

> A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Veenstra v Washtenaw Country Club,* 466 Mich 155, 163; 645 NW2d 643 (2002). A motion for summary disposition should be granted when, except in regard to the amount of damages, there is no genuine issue in regard to any material

fact and the moving party is entitled to judgment or partial judgment as a matter of law. MCR 2.116 (C)(10), (G)(4); *Veenstra, supra* at 164. In deciding a motion brought under this subsection, the trial court must consider affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in a light most favorable to the nonmoving party. *Veenstra, supra* at 164. The moving party has the initial burden of supporting its position with documentary evidence, but once the moving party meets its burden, the burden shifts to the nonmoving party to establish that a genuine issue of disputed fact exists. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). "Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material facts exists." *Id.* The moving party is entitled to a judgment as a matter of law when the proffered evidence fails to establish a genuine issue regarding any material fact. *Veenstra, supra* at 164. The decision whether to grant a motion for summary disposition is a question of law that is reviewed de novo. *Id.* at 159.

Additionally, we only consider what was properly presented to the trial court before its decision on the motion. *Sprague v Farmers Ins Exch*, 251 Mich App 260, 265; 650 NW2d 374 (2002); *Long v Chelsea Community Hosp*, 219 Mich App 578, 588; 557 NW2d 157 (1996).

The CRA prohibits retaliation against a person "because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding or hearing under this act." MCL 37.2701(a). A prima facie case of retaliation can be established if a plaintiff proves: (1) that he was engaged in a protected activity; (2) that this was

known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Barrett, supra* at 315, citing *Meyer v Center Line*, 242 Mich App 560, 568-569; 619 NW2d 182 (2000), citing *DeFlaviis v Lord & Taylor, Inc*, 223 Mich App 432, 436; 566 NW2d 661 (1997).

Defendant challenges the trial court's determination that plaintiff had created a genuine issue of material fact with regard to whether he had suffered an adverse employment action for opposing a violation of the CRA. What constitutes an adverse employment action has received considerable attention by both state and federal courts applying either the CRA or its federal counterpart, Title VII of the Civil Rights Act.[3]

In *Wilcoxon v Minnesota Mining & Mfg Co*, 235 Mich App 347, 364; 597 NW2d 250 (1999), we defined an adverse employment action as an employment decision that is "materially adverse in that it is more than [a] 'mere inconvenience or an alteration of job responsibilities' " and that "there must be some objective basis for demonstrating that the change is adverse because a " 'plaintiff's "subjective impressions as to the desirability of one position over another" [are] not controlling.' " *Id.*, quoting *Crady v Liberty Nat'l Bank & Trust Co*, 993 F2d 132, 136 (CA 7, 1993), and *Kocsis v Multi-Care Mgt Inc*, 97 F3d 876, 886 (CA

---

[3] It is well-settled that when the language of the CRA and Title VII are substantially similar, our courts consider federal case law interpreting Title VII to be persuasive, albeit not binding, authority on issues brought under the CRA. *Krohn v Sedgwick James of Michigan, Inc*, 244 Mich App 289, 297 n 4; 624 NW2d 212 (2001).

6, 1996), quoting *Kelleher v Flawn*, 761 F2d 1079, 1086 (CA 5, 1985).

Although there is no exhaustive list of adverse employment actions, typically it takes the form of an ultimate employment decision, such as "a termination in employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *White v Burlington N & SF R Co*, 310 F3d 443, 450 (CA 6, 2002), citing *Kocsis*, *supra* at 886, *Crady*, *supra* at 136, and *Hollins v Atlantic Co, Inc*, 188 F3d 652, 662 (CA 6, 1999). See, also, *Hilt-Dyson v Chicago*, 282 F3d 456, 465-466 (CA 7, 2002). In determining the existence of an adverse employment action, courts must keep in mind the fact that "[w]ork places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action." *Blackie v Maine*, 75 F3d 716, 725 (CA 1, 1996).

In opposition to defendant's motion for summary disposition, plaintiff argued that he had suffered the following incidents of adverse employment actions: (1) he was investigated by defendant for worker's compensation fraud based on events occurring more than four years earlier; (2) he was isolated at work; and (3) one of his supervisors, Tom Smith, "ridiculed" him for filing the lawsuit. Without any analysis or discussion, the trial court held that plaintiff had created a genuine issue of material fact regarding the existence of an adverse employment action on the basis that after the complaint was filed defendant had insti-

tuted an investigation into whether plaintiff had committed worker's compensation fraud for a filing that occurred more than four years earlier. The trial court specifically rejected plaintiff's assertion that his claimed isolation constituted an adverse employment action, and did not address the other argument.

We conclude that the trial court erred in determining that the record before it at the time the summary disposition motion was decided created a genuine issue of material fact.[4] Instead, we hold that plaintiff failed to establish that he was subjected to an adverse employment action for purposes of his retaliation claims.

Relying on *Berry v Stevinson Chevrolet*, 74 F3d 980 (CA 10, 1996), plaintiff argues that the trial court correctly found that defendant's investigation into potential worker's compensation fraud constituted an adverse employment action. In this case, unlike in *Berry*, defendant did not file any charges against plaintiff. In fact, it is undisputed that defendant took no action, either publicly or in the workplace, against plaintiff whatsoever. Hence, the concerns expressed

---

[4] We reject plaintiff's invitation to consider events that occurred after the summary disposition motion was decided. When determining the propriety of the denial of defendant's motion, we must limit our review to the evidence presented to the trial court at the time defendant's motion was decided. *Sprague, supra; Long, supra*. Although plaintiff's complaint alleges that the retaliation was continual in nature, plaintiff cannot defeat a properly supported motion by promises to produce evidence in the future to support the claim at trial. *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999). As the federal courts have aptly noted under the analogous federal summary judgment standards, once discovery is closed the summary disposition hearing becomes the "put up or shut up" stage of the proceeding, and if there is no factual support for a claim, it will not continue. See *Albiero v Kankakee*, 246 F3d 927, 933 (CA 7, 2001); *Weinstock v Columbia Univ*, 224 F3d 33, 41 (CA 2, 2000); *Cox v Kentucky Dep't of Transportation*, 53 F3d 146, 150 (CA 6, 1995); *United States v AMC Entertainment, Inc*, 232 F Supp 2d 1092, 1118 (CD Cal, 2002).

by the *Berry* Court regarding the potential adverse effects of a public filing, a public criminal trial, and a possible conviction are not present in this case. *Berry, supra* at 986-987. *Berry* is therefore not applicable. See, e.g., *Haddon v Executive Residence of the White House*, 313 F3d 1352, 1363-1364; 2002 US App Lexis 25452 (2002) (finding *Berry* inapplicable because employer investigation substantially different than public criminal proceedings), and *Young v White*, 200 F Supp 2d 1259, 1276 (D Kan, 2002) (concluding the same). We conclude that because no term or condition of plaintiff's employment was affected by defendant's investigation into alleged worker's compensation fraud, plaintiff did not suffer an adverse employment action. *Jager v Nationwide Truck Brokers Inc*, 252 Mich App 464, 473; 652 NW2d 503 (2002) (holding that the plaintiff's humiliation after the defendant commenced an investigation that found charges unsubstantiated did not constitute adverse employment action). Plaintiff's subjective perception that he was adversely affected because an investigation occurred does not rise to the level of an objectively verifiable employment action. *Meyer, supra*.

We also reject plaintiff's argument that Mr. Cooper's testimony established that plaintiff was "isolated." Initially we note that the deposition testimony cited and attached to plaintiff's response to defendant's motion for summary disposition contained no evidence that plaintiff was being isolated by defendant in such a manner that it would constitute an adverse employment action. MCR 2.116(G)(4). Furthermore, consideration of the testimony cited and quoted by plaintiff and defendant in their appellate briefs does not alter our conclusion. That testimony reveals that after

plaintiff filed this lawsuit, certain employees opined that plaintiff was "just [out] to get a ton of money from the county," while a supervisor told others that he could not understand how plaintiff could sue the county. Finally, one employee testified that since the lawsuit was filed, some employees were not willing to socialize with plaintiff. As numerous courts have held, however, this type of ostracism or isolation is not the sort of conduct that rises to the level of an adverse employment action. *Jones v Fitzgerald*, 285 F3d 705, 716 (CA 8, 2002); *Marrero v Goya of Puerto Rico, Inc*, 304 F3d 7, 25 (CA 1, 2002). These events may not have made it an idyllic work environment, but they certainly did not constitute an adverse employment action. As such, the trial court erred in denying defendant's motion for summary disposition as it pertained to plaintiff's retaliation claim.

### C. THE JURY'S VERDICT

Defendant's final argument is that the jury award of $650,000 in future damages should be vacated because it was excessive, was not based on the evidence, was not based on appropriate considerations, and was punitive in nature. Although defendant forcefully argues the excessiveness of the verdict, it never moved in the trial court for a remittitur or a new trial on this ground. MCR 2.611(A)(1)(d). Defendant likewise failed to object to plaintiff's requests for jury instructions on future damages.[5] Consequently, defendant has failed to preserve this argument for appel-

---

[5] From our review of the record it appears defendant only objected posttrial to adding interest to the future damage award, but defendant has not raised that issue on appeal.

late review. *McCue v Detroit United Railway*, 210 Mich 554, 557; 178 NW 68 (1920); *Heshelman v Lombardi*, 183 Mich App 72, 83; 454 NW2d 603 (1990); *Walls v Transamerican Freight Lines*, 37 Mich App 307, 309; 194 NW2d 422 (1971).

We also reject defendant's argument that there was no evidence to support the jury's award of future damages.[6] The evidence presented to the jury revealed that plaintiff had been routinely subjected to derogatory and degrading remarks about his national origin over the course of his employment. Plaintiff also presented evidence that defendant failed to promptly react to the harassment, and that defendant's supervisory personnel were engaged in some of the behavior themselves. Additionally, plaintiff's witnesses testified about the continuing effects plaintiff has suffered because of the harassment. As such, we conclude that there was sufficient evidence in the record to support the jury's award of future damages.[7] Hence, we reject all of defendant's arguments and affirm the future damages awarded to plaintiff. *Harrigan v Ford Motor Co*, 159 Mich App 776, 790-791; 406 NW2d 917 (1987).[8]

---

[6] Unlike the excessiveness argument, there is no preservation requirement for defendant's challenge to the sufficiency of evidence supporting the award. MCR 2.517(A)(7).

[7] We reject plaintiff's suggestion that we consider the damage award in this case by comparing it to a purported award in another employment discrimination case that was reported in *Michigan Lawyers Weekly*. Not only is the document inadmissible, but more importantly, what we are concerned with is whether the award is sustainable under the facts of this case, rather than how this award compares to a newspaper summary of cases with different facts. *Knight v Gulf & Western Properties, Inc*, 196 Mich App 119, 131-132; 492 NW2d 761 (1992).

[8] Although defendant argues in passing that plaintiff cannot recover damages for future events that have yet to occur (and therefore may never occur), it cited no case law or other authority to support its argu-

### III. CONCLUSION

For these reasons, we affirm the trial court's evidentiary ruling, reverse the denial of defendant's motion for summary disposition as it pertained to plaintiff's retaliation claim, and affirm the future damages awarded to plaintiff. We remand this matter to the trial court for entry of an order dismissing plaintiff's retaliation claim. We do not retain jurisdiction.

---

ment. We are disinclined to search for authority to support a party's position, *Staff v Johnson*, 242 Mich App 521, 529; 619 NW2d 57 (2000), and will not do so now. However, we note that we have uncovered no published case law that addresses the propriety of awarding future damages for emotional distress. Most cases of future damages in the employment context pertain to awards of future economic damages to plaintiffs who have lost employment, or have been denied promotions, and need to be "made whole" for what they would have received in the absence of discrimination. See, e.g., *Riethmiller v Blue Cross & Blue Shield of Michigan*, 151 Mich App 188, 197-200; 390 NW2d 227 (1986) (discussing "front pay"). We will not delve into this important and interesting legal issue when defendant has failed to properly raise it before this Court or the lower court. We do note, however, that "[g]enerally, under Michigan law, only one recovery is allowed for an injury." *Grace v Grace*, 253 Mich App 357, 368; 655 NW2d 595 (2002). Defendant asserts that plaintiff has filed another lawsuit against defendant asserting that he has suffered from retaliation that allegedly occurred after the verdict was rendered. Given his award of future damages in this case, we question the remedies available to plaintiff in a second lawsuit.