# STATE OF MICHIGAN

# COURT OF APPEALS

SHANETTA HANNAH,

        Plaintiff-Appellee,

v

BLUE CROSS BLUE SHIELD OF MICHIGAN,

        Defendant-Appellant.

UNPUBLISHED
August 24, 2017

No. 331940
Wayne Circuit Court
LC No. 15-002272-CD

Before: GADOLA, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

In this suit brought under the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq.*, defendant, Blue Cross Blue Shield of Michigan, appeals by leave granted[1] the trial court's order denying its motion for summary disposition brought under MCR 2.116(C)(7) and (C)(10). We reverse and remand for entry of an order granting summary disposition in favor of defendant under MCR 2.116(C)(10).

## I. FACTS

Plaintiff, Shanetta Hannah, worked for defendant for 23 years before her discharge. At the time of her discharge, plaintiff was employed as a "CSR IV," a customer service representative and unit leader in defendant's Medicare Advantage department. Her direct supervisor was Barbara Espinoza-Soriano (Espinoza). On four consecutive days in January 2013, plaintiff engaged in conduct that led to a 30-day suspension, effective February 22, 2013. In each incident, plaintiff was disrespectful toward Espinoza when Espinoza asked plaintiff questions or directed her to perform a specific task. The notice that informed plaintiff of her suspension stated that any further incidents of misconduct or work rule violations could lead to the termination of her employment. On February 26, 2013, plaintiff filed a complaint with the Michigan Department of Civil Rights and the Equal Employment Opportunity Commission (EEOC). Plaintiff's complaint alleged discrimination on the basis of her age, race, and gender.

---

[1] *Hannah v Blue Cross Blue Shield of Mich*, unpublished order of the Court of Appeals, entered July 8, 2016 (Docket No. 331940).

-1-

Plaintiff returned to work from her suspension on March 22, 2013. On April 17, 2013, another incident occurred. Plaintiff was scheduled to staff a particular telephone line that defendant makes available to union benefit representatives (the "UBR line"). Under contracts with various unions, this line must be staffed by employees, such as plaintiff, who are employed in higher-ranking customer service positions. Shortly after plaintiff's shift on the UBR line began, Espinoza was informed by another employee that no one was monitoring the line. Espinoza found plaintiff at her desk, and after confirming that plaintiff was scheduled to be staffing the UBR line, directed plaintiff to do so. Plaintiff refused, stating that she had been assigned a different task. When Espinoza instructed plaintiff to staff the line a second time, plaintiff became angry and loud, pounding her desk. Plaintiff again told Espinoza that she had been assigned a different task. Espinoza informed plaintiff that she would have to put that task aside and staff the UBR line. Plaintiff pointedly suggested that another employee of her rank, who was standing nearby, should staff the line. This employee, who was not scheduled to staff the UBR line, put aside plans to take a lunch break and staffed the line for a short period before Espinoza apologized for plaintiff's behavior and told her she could leave for lunch. Plaintiff eventually logged into the line more than 30 minutes after Espinoza's first request.

The day after this incident, plaintiff did not come to work, and went on short-term disability leave. Plaintiff returned to work on July 8, 2013. On July 10, 2013, a meeting was held regarding the April 17, 2013 incident. When asked to explain her behavior that day, plaintiff said only that she could not remember. Plaintiff was terminated from her employment effective August 14, 2013. The notice of discipline that informed plaintiff of her termination referenced the April 17, 2013 incident as the basis for her termination. Plaintiff filed a second EEOC complaint after her termination.

Plaintiff's union filed three grievances on her behalf. The first two grievances were filed on February 22, 2013. One grievance challenged plaintiff's suspension, while the other alleged that Espinoza had harassed plaintiff. The third grievance was filed in August 2013, and challenged plaintiff's discharge. All three grievances were denied by defendant and appealed to arbitration. After hearing testimony and considering evidence presented by both sides, the arbitrator denied all three grievances in a detailed opinion issued on December 17, 2013.

After the arbitration proceedings concluded, plaintiff filed the instant suit. Plaintiff alleged in her complaint that she was discriminated against on the basis of age and race. She also alleged retaliation in response to the filing of her first EEOC complaint. Defendant moved for summary disposition, arguing that the arbitrator's ruling collaterally estopped plaintiff from relitigating certain factual conclusions reached by the arbitrator. Defendant also argued that, notwithstanding the arbitrator's decision, there was no evidentiary support for plaintiff's discrimination and retaliation claims. The trial court concluded that collateral estoppel was inapplicable, and that questions of fact existed that precluded granting summary disposition with respect to plaintiff's claims. Defendant sought leave to appeal in this Court, and this Court granted leave.

## II. ANALYSIS

The first question placed before us is whether, notwithstanding the result of arbitration, plaintiff presented evidence sufficient to survive summary disposition under MCR 2.116(C)(10). We conclude that she has not.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). As our Supreme Court has explained:

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Id*. at 120.]

### A. AGE AND GENDER DISCRIMINATION

The bulk of plaintiff's complaint alleges that her suspension and discharge were the result of discrimination on the basis of her age and race. ELCRA prohibits employers from discriminating "against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status." MCL 37.2202(1)(a). "Proof of discriminatory treatment in violation of [ELCRA] may be established by direct evidence or by indirect or circumstantial evidence." *Sniecinski v Blue Cross & Blue Shield of Mich*, 469 Mich 124, 132; 666 NW2d 186 (2003). "In cases involving direct evidence of discrimination, a plaintiff may prove unlawful discrimination in the same manner as a plaintiff would prove any other civil case." *Id*. Direct evidence is evidence that, if believed, requires reaching the "conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Id*. at 133 (quotation marks and citations omitted).

As our Supreme Court has explained:

> In cases involving indirect or circumstantial evidence, a plaintiff must proceed by using the burden-shifting approach set forth in *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973). This approach allows a plaintiff to present a rebuttable prima facie case on the basis of proofs from which a factfinder could *infer* that the plaintiff was the victim of unlawful discrimination. To establish a rebuttable prima facie case of discrimination, a plaintiff must present evidence that (1) she belongs to a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) her failure to obtain the position occurred under circumstances giving rise to an inference of unlawful discrimination. Once a plaintiff has presented a prima facie case of discrimination, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If a

defendant produces such evidence, the presumption is rebutted, and the burden shifts back to the plaintiff to show that the defendant's reasons were not the true reasons, but a mere pretext for discrimination. [*Id*. at 133-134 (quotation marks, citations, and footnote omitted).]

In this case, plaintiff cites the *McDonnell Douglas* framework. Assuming plaintiff has presented a prima facie case of discrimination, it is clear that defendant has offered nondiscriminatory reasons for the adverse employment actions taken against plaintiff—namely, her repeated acts of insubordination in January 2013, which led to her suspension, and her refusal to comply with Espinoza's directives on April 17, 2013, regarding the UBR line, which led to her termination. Thus, the prima facie case has been rebutted, and the burden shifts back to plaintiff "to show that the defendant's reasons were not the true reasons, but a mere pretext for discrimination." *Id*. at 134.[2]

Plaintiff may establish that defendant's proffered reasons for her suspension and discharge are pretexts "(1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision." *Major v Village of Newberry*, 316 Mich App 527, 542; 892 NW2d 402 (2016) (quotation marks and citation omitted). As our Supreme Court has explained, "disproof of an employer's articulated reason for an adverse employment decision defeats summary disposition only if such disproof also raises a triable issue that discriminatory animus was a motivating factor underlying the employer's adverse action." *Lytle v Malady (On Rehearing)*, 458 Mich 153, 175; 579 NW2d 906 (1998). "In other words, plaintiff must not merely raise a triable issue that the employer's proffered reason was pretextual, but that it was a pretext for age or [race] discrimination." *Id*. at 175-176.

Plaintiff's arguments fall into two categories. First, she contends that Brian Keane, the director of the Medicare Advantage department, has a history of discriminating against older, African-American employees, and that her suspension and discharge were the result of this animus. Second, plaintiff attempts to show that the reasons given for her discharge were false.

---

[2] The parties seem to dispute whether the fourth element of a prima facie case has been satisfied in this matter. We find it unnecessary to resolve that dispute because we have assumed, without deciding, that plaintiff has established a prima facie case. See *Town v Mich Bell Telephone Co*, 455 Mich 688, 699; 568 NW2d 64 (1997) (opinion by BRICKLEY, J):

Rather than evaluate plaintiff's case at the prima facie stage, however, in this case we elect to presume that plaintiff has established a prima facie case. The purpose of the prima facie case is to force the defendant to provide a nondiscriminatory explanation for the adverse employment action. That purpose having been served, we move to the plaintiff's evidence that the defendant's proffered nondiscriminatory reason is a pretext for discrimination.

## 1. KEANE'S PURPORTED ANIMUS

Plaintiff relies on several affidavits, lists of purportedly discharged employees, and her own deposition testimony to establish Keane's purported animus. Patricia Keys, another CSR IV employee, states in her affidavit that Keane was "widely known" as having a "negative feeling" toward older, African-American employees, and that he "developed a pattern of discriminating against" such employees through what Keys describes as "unjust firings and demotions" not experienced by younger or white employees. Kristofor Harrison, another former employee, states in his affidavit that defendant violated its union contract by passing over a more qualified and senior African-American employee in favor of a white employee. Carol DeJules, one of plaintiff's former coworkers, claims in her affidavit that Espinoza "said that she felt bad" about plaintiff's discharge, and that she felt she had been "used" by Keane to "target" plaintiff. At her deposition, plaintiff testified that she was "advised" to be careful because Keane had "a history of terminating African-American females forty and over with high seniority." Finally, plaintiff cites lists of employees who were fired or demoted. The majority of these employees are African-American; where ages are provided, all are over age 40.

This evidence fails to create a question of fact sufficient to survive summary disposition. Certainly, "[a]ffidavits, depositions, admissions, or other documentary evidence" may be utilized to respond to a motion brought under MCR 2.116(C)(10). *SSC Assoc Ltd Partnership v Gen Retirement Sys of Detroit*, 192 Mich App 360, 363-364; 480 NW2d 275 (1991). But "[o]pinions, conclus[o]ry denials, unsworn averments, and inadmissible hearsay do not satisfy the court rule; [a] disputed fact (or the lack of it) must be established by admissible evidence." *Id*. at 364. "An affidavit that contains mere conclusory statements is insufficient to support a motion for summary disposition." *Kozak v Lincoln Park*, 499 Mich 465, 468; 885 NW2d 443 (2016).

Beginning with plaintiff's deposition testimony, it is clear that plaintiff is simply relaying the purported statements of others when she claims she was "advised" of Keane's purported animus. This is inadmissible hearsay, insufficient to defeat a summary disposition motion. See MRE 801(c) (" 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"). So, too, is the statement contained in DeJules's affidavit. DeJules's affidavit merely repeats a statement allegedly made by Espinoza.[3]

---

[3] Plaintiff contends that the statements of Espinoza and other employees are not hearsay pursuant to MRE 801(d). She offers absolutely no discussion of how these statements would be admissible under this rule. Plaintiff may not merely announce her position and then "leave it to this Court to discover and rationalize the basis for [her] claims, unravel or elaborate [her] argument, or search for authority for [her] position." *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 499; 668 NW2d 402 (2003). Moreover, plaintiff has not shown that the only subrule that is arguably applicable, MRE 801(d)(2)(D), would apply to Espinoza's statements. MRE 801(d)(2)(D) provides that a statement is not hearsay if it is "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship[.]" Even assuming Espinoza is defendant's agent, we are not

The essential fact derived from Harrison's affidavit is his claim that a more qualified, African-American employee was passed over for a promotion in favor of a white employee. Harrison, however, offers no basis for his opinion that the African-American employee was more qualified. Such a conclusory statement of opinion does not create a question of fact. *Kozak*, 499 Mich at 468; *SSC Assoc Ltd Partnership*, 192 Mich App at 364. Further, defendant provided the trial court with evidence explaining precisely why the African-American employee did not receive the promotion. After conducting interviews, defendant's interview team agreed that the African-American employee lacked certain skills necessary to succeed in the position she sought. Other employees, while having less seniority, had the skills necessary to succeed. Plaintiff offers no evidence challenging these conclusions.[4]

Turning to the lists of employees, these lists provide no more than names, races, and, in some cases, approximate ages. The lists provide absolutely no insight into why the employees were terminated. Defendant, however, has supplied its own evidence with regard to these employees. Defendant's evidence shows that not all of these employees were terminated or demoted. Those that did suffer an adverse employment action were found to have committed misconduct or were not meeting production requirements. Plaintiff offers nothing to rebut defendant's evidence. There is simply nothing in evidence from which it could be inferred that race or age was a motivating factor in the actions taken with respect to these other employees.

As for Keys, plaintiff cites portions of her affidavit where she claims it was widely known within defendant's organization that Keane held animus toward African-American employees over the age of 40. As evidence, Keys alludes to "unjust" firings and demotions of employees fitting this description. But nowhere has plaintiff produced evidence showing how any firings or demotions were unjust or otherwise motivated by discriminatory animus. Keys's bald assertion to that effect does not create a question of fact. *Kozak*, 499 Mich at 468; *SSC Assoc Ltd Partnership*, 192 Mich App at 364.

But even assuming plaintiff has presented sufficient evidence from which a rational factfinder could conclude that Keane did, in fact, have a pattern of discrimination against older, African-American employees, she still fails to present evidence sufficient to survive defendant's motion. This is because she offers no evidence tending to show that this attitude, assuming it exists, was in any way a motivating factor for her suspension and discharge. Rather, she would simply ask a jury to speculate that, irrespective of her repeated acts of insubordination, she was suspended and terminated due to Keane's discriminatory animus. It is well established in this

convinced that her alleged statements that she "felt bad" about plaintiff's discharge and "fe[lt] like" Keane used her to "target" plaintiff were made in her capacity as a supervisor and were sufficiently related to her responsibilities in that role to constitute a "matter within the scope of [her] agency or employment[.]" MRE 801(d)(2)(D). Finally, even assuming Espinoza's statements were admissible under MRE 801(d)(2)(D), the statements said nothing about plaintiff's race or age, or about retaliation.

[4] Harrison's affidavit does contend that this employee prevailed in a grievance. But this is not exactly true. The employee's union settled the matter with defendant through an agreement that was specifically denoted as a "one-time, non-precedent setting settlement" that would "in no way prejudice either party's position on any other current or future matters."

state that "[m]ere speculation or conjecture is insufficient to establish reasonable inferences of causation." *Sniecinski*, 469 Mich at 140. "[L]itigants do not have any right to submit an evidentiary record to the jury that would allow the jury to do nothing more than guess." *Skinner v Square D Co*, 445 Mich 153, 174; 516 NW2d 475 (1994).

Plaintiff relies on *Bacon v Honda of America Mfg, Inc*, 370 F3d 565 (CA 6, 2004), as support.[5] Specifically, she cites *Bacon* for the proposition that "pattern-or-practice evidence may be relevant to proving an otherwise-viable individual claim for disparate treatment under the *McDonnell Douglas* framework." *Id*. at 575. Plaintiff's quotation of *Bacon*, however, omits necessary context:

> The district court found, based on the weight of authority outside the Sixth Circuit, that the pattern-or-practice method of proving discrimination, in which the plaintiff shows that the company had a policy of discriminating against a protected class, is not available to individual plaintiffs. All interpret the Supreme Court's discussion of the pattern-or-practice method of proof as being limited to class actions or suits by the government. Although plaintiffs argue on appeal that the district court improperly analyzed their pattern-or-practice basis for class certification, they have not specifically challenged the court's finding that the pattern-or-practice method of proof is not available to them on their individual claims.
>
> *We therefore hold that the pattern-or-practice method of proving discrimination is not available to individual plaintiffs.* We subscribe to the rationale that a pattern-or-practice claim is focused on establishing a policy of discrimination; *because it does not address individual hiring decisions, it is inappropriate as a vehicle for proving discrimination in an individual case. . . .* However, pattern-or-practice evidence may be relevant to proving an otherwise-viable individual claim for disparate treatment under the *McDonnell Douglas* framework. [*Bacon*, 370 F3d at 575 (citations omitted; emphasis added).]

In other words, *Bacon* holds that it is not enough for an individual plaintiff to demonstrate that a pattern or practice of discrimination exists. Rather, the individual plaintiff must address his or her individual circumstances. *Id*. The sentence quoted by plaintiff simply recognizes that, if a plaintiff has presented a viable claim of disparate treatment, a pattern or practice of discrimination may constitute additional, relevant evidence. But under *Bacon*, pattern-or-practice evidence, standing alone, is not sufficient to demonstrate that an employer's decision with respect to an individual employee was motivated by unlawful discrimination. *Id*.

---

[5] Plaintiff is correct in arguing that it is appropriate to look to federal precedent as guidance in this matter. While not binding authority, Michigan courts "are many times guided in [the] interpretation of [ELCRA] by federal court interpretations of its counterpart federal statute." *Chambers v Trettco, Inc*, 463 Mich 297, 313; 614 NW2d 910 (2000).

Setting all of this aside, plaintiff's theory fails for another reason. Ultimately, the record demonstrates that Keane was not responsible for determining plaintiff's discipline. Tiffany Moss, a manager in the Medicare Advantage department, explained that whether to take disciplinary action against an employee is a decision made by the manager, based on recommendations from defendant's Employee and Labor Relations department. With regard to plaintiff's suspension, emails relied upon by plaintiff demonstrate that this process was followed, and that Keane was not involved in the ultimate disciplinary decision. One particular email cited by plaintiff shows that Keane was aware of the January 2013 incidents involving plaintiff, and actually disagreed with the disciplinary action taken against her. That Keane did not agree with the disciplinary action taken against plaintiff demonstrates that her suspension was not Keane's decision, but the decision of others. Had the matter been up to Keane, plaintiff would have been discharged in January 2013.

With regard to plaintiff's termination, Moss explained that the decision to terminate plaintiff was hers. There is no admissible evidence in the record showing that Keane was involved in the decision. Plaintiff relies on DeJules's affidavit, and specifically, her claims that Espinoza said she felt "used" by Keane to effectuate plaintiff's termination. As explained, this statement is inadmissible hearsay that does not create a factual question. On the whole, plaintiff's contention that Keane directed or orchestrated her termination is no more than speculation and conjecture, insufficient to create a question of fact. *Sniecinski*, 469 Mich at 140.

## 2. ALLEGED FALSEHOODS

Plaintiff's remaining arguments attempt to demonstrate that the reasons given for her suspension and discharge were false, and thus, not the true reasons for these disciplinary actions. Plaintiff first cites Keys's affidavit, in which Keys explains that with regard to the April 17, 2013 incident, plaintiff had been given conflicting directives. According to Keys, what Espinoza viewed as insubordination was actually the fault of management in giving plaintiff conflicting assignments. Keys then explains that she has never witnessed plaintiff being insubordinate, and thus, in her opinion, the allegations of insubordination against plaintiff were false.

Keys's affidavit fails to show that plaintiff's insubordination was not the cause of her suspension and termination. Keys's affidavit contains no evidence contradicting Espinoza's accounts of the January 2013 incidents. She simply opines that, because she did not witness any acts of insubordination, all allegations of insubordination must be false. That Keys did not witness the acts does not mean that they did not occur. As is often said, the absence of evidence is not evidence of absence. See, e.g., *In re Rail Freight Fuel Surcharge Antitrust Litigation*, 406 US App DC 371, 381; 725 F3d 244 (2013).

Keys does claim some personal knowledge of the April 17, 2013 incident. Keys, however, focuses on the fact that plaintiff was given two different directives by two different supervisors. This was also clear from Espinoza's account. In fact, Espinoza, plaintiff's direct supervisor, resolved the conflict by instructing plaintiff to set aside any other work and staff the UBR line. Even plaintiff acknowledged that she failed to comply with Espinoza's directions on April 17, 2013, and that Espinoza had the authority to give these directions. Keys's affidavit fails to demonstrate that the reason for plaintiff's discharge—her refusal to comply with Espinoza's directives and her conduct in response to Espinoza's directives—was fabricated.

-8-

The next purported inaccuracy cited by plaintiff relates to the January 25, 2013 incident. At about 1:20 p.m., another representative received a call from a customer who asked to speak with a supervisor. Plaintiff refused the representative's request that she take the call. Espinoza then directed the representative to obtain the customer's name and telephone number and prepare a "call back slip." Espinoza directed the representative to give the slip to plaintiff when it was ready. Espinoza then went to plaintiff and informed her that she expected plaintiff to call the customer back. Plaintiff responded with hostility, eventually telling Espinoza to "stop repeating [your]self" and to "leave [her] alone and . . . go back to your desk." At 4:54 p.m., in an instant message, Espinoza asked the representative if the call back slip had been prepared. The representative informed Espinoza that, in the end, the customer decided that he or she did not need to speak to a supervisor, and thus, the call back slip was not prepared.

Plaintiff now contends that the instant message conversation contradicts Espinoza's account of the incident earlier in the day. But as can plainly be seen, there are no contradictions present. Espinoza simply learned, several hours after plaintiff's insubordinate conduct, that the call back was ultimately unnecessary. This does not in any way contradict Espinoza's account of plaintiff's actions earlier in the day.

Plaintiff cites to Keys's affidavit, claiming it shows a falsehood. While plaintiff does not specifically describe what falsehood is stated, it would appear that she cites to Keys's opinion that plaintiff was not insubordinate. As explained, Keys's opinion in this regard is not supported by the evidence, and this unsupported opinion does not create a question of fact. *Kozak*, 499 Mich at 468; *SSC Assoc Ltd Partnership*, 192 Mich App at 364.[6]

Plaintiff contends that a factual inaccuracy exists in the disciplinary notice that informed plaintiff of her discharge. The notice states:

> [Plaintiff] on April 17, 2013 failed to follow the instructions of her Team Leader Barbara Espinoza-Soriano. She was instructed by her team leader to answer calls that were in the queue. [Plaintiff] instead of following the instruction of her team leader continued to argue why she was asked to go on the call line even when she was previously assigned to answer calls from 1:00[ p.m.] until 4:00 [p.m.] on that date. [Plaintiff] was insubordinate with her team leader in violation of the company policy as outlined in the work place expectations.

Plaintiff explains that there were no calls in queue on the UBR line during this incident. This appears to be true, and so in that regard, the notice contains a slight inaccuracy. But read as a whole, the notice clearly describes the incident as it occurred. Plaintiff indeed was instructed to answer calls that came in on the UBR line, and refused to do so. It is clear that the relevant issue

---

[6] Plaintiff also cites DeJules's affidavit as containing evidence of a falsehood. She fails, however, to describe the purported falsehood. Plaintiff cannot leave it to this Court to discover the basis of her argument. *Wiley*, 257 Mich App at 499. In any event, after reading the affidavit, we are unable to discern what falsehood might be derived from the affidavit, which does not address any of the acts of insubordination that gave rise to plaintiff's suspension and discharge.

was that the line be staffed—i.e., that an appropriate employee be available to take any calls that came in. This slight and irrelevant misstatement could not cause a rational factfinder to conclude that the entire reason for plaintiff's discharge was fabricated.

In sum, presuming plaintiff has established a prima facie case, defendant has presented a nondiscriminatory reason for plaintiff's suspension and discharge: her insubordination. Plaintiff fails to present evidence from which a rational factfinder could conclude that this articulated reason is merely pretext. Accordingly, defendant is entitled to summary disposition with regard to plaintiff's discrimination claims.[7]

## B. RETALIATION CLAIMS

Plaintiff's complaint also alleges retaliation in violation of ELCRA. MCL 37.2701(a) states that "[t]wo or more persons shall not conspire to, or a person shall not . . . [r]etaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge [or] filed a complaint . . . under this act." To establish a prima facie case of retaliation, a plaintiff must demonstrate:

> (1) that he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. [*DeFlaviis v Lord & Taylor, Inc*, 223 Mich App 432, 436; 566 NW2d 661 (1997).]

An adverse employment action is more than a "mere inconvenience or an alteration of job responsibilities . . . ." *Peña v Ingham Co Rd Comm*, 255 Mich App 299, 311; 660 NW2d 351 (2003) (quotation marks and citations omitted). "[T]here must be some objective basis for demonstrating that the change is adverse because a plaintiff's subjective impressions . . . are not controlling." *Id*. (quotation marks, brackets, and citations omitted). As this Court has explained:

> Although there is no exhaustive list of adverse employment actions, typically it takes the form of an ultimate employment decision, such as a termination in employment, a demotion evidenced by a decrease in wage or

---

[7] Plaintiff also briefly points out her belief that she was "targeted" because Espinoza only searched for plaintiff in the bathrooms at work, and that this was unusual. Espinoza explained why she searched for plaintiff in the bathrooms and other areas. Plaintiff had entered a code indicating that she was assisting other team members, but was nowhere to be found for lengthy periods of time. Thus, Espinoza feared that plaintiff had experienced a medical emergency and needed assistance. There is no evidence that any other employees engaged in similar behavior, or that Espinoza would have acted differently toward employees who similarly disappeared without explanation. No rational factfinder could conclude that plaintiff was "targeted" due to her age or race.

-10-

salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation. In determining the existence of an adverse employment action, courts must keep in mind the fact that work places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action. [*Id*. at 312 (quotation marks, brackets, and citations omitted).]

Plaintiff contends that she was retaliated against for filing her first EEOC complaint. The first instance of retaliation cited by plaintiff is when, after she sent an email to the EEOC during work hours, plaintiff was called into a meeting and informed that she could be disciplined for sending personal emails during work hours. It is undisputed that this is all that occurred; plaintiff was simply informed that her conduct violated a company policy and asked not to do so again. This does not rise to the level of an adverse employment action. It is nothing akin to an ultimate employment decision. That plaintiff is displeased by her employer's action does not elevate defendant's conduct to the level of an adverse employment action. *Id*. at 311-312.

Plaintiff also alleges retaliation in that she was asked to speak with human resources regarding the April 17, 2013 incident on three separate occasions over the course of one or two weeks. This, too, does not rise to the level of an adverse employment action. Plaintiff was merely asked to discuss the April 17, 2013 incident, an incident that lead to her termination. That defendant gave plaintiff opportunities to explain her side of the incident cannot be considered an ultimate employment decision. Plaintiff's subjective feelings regarding these requests do not elevate the requests to the level of an adverse employment action. See *id*. at 313-314 (concluding that an employer's investigation into potential worker's compensation fraud was not an adverse employment action).

Finally, plaintiff contends that her discharge was done in retaliation for the filing of the EEOC complaint. Certainly, this is an adverse employment action. However, plaintiff must still demonstrate that there exists a "causal connection between the protected activity and" her discharge. *Id*. at 311. Plaintiff's discharge occurred fairly close in time to her filing of an EEOC complaint. But "[s]omething more than a temporal connection between protected conduct and an adverse employment action is required to show causation where discrimination-based retaliation is claimed." *West v Gen Motors Corp*, 469 Mich 177, 186; 665 NW2d 468 (2003). A plaintiff's engagement in protected activity "does not immunize him from an otherwise legitimate, or unrelated, adverse job action." *Id*. at 187.

Plaintiff first discusses the purported statement by Espinoza relayed by DeJules in her affidavit (that Espinoza "said that she felt bad" about plaintiff's discharge and that she felt "used by Brian Keane" to target plaintiff). As already discussed, this is bald hearsay that cannot be utilized to create a question of fact. *SSC Assoc Ltd Partnership*, 192 Mich App at 364. Plaintiff also discusses the fact that another employee, Claudette Lee, was discharged within 60 days after filing her own EEOC complaint claiming race, age, and gender discrimination. But plaintiff fails to explain how this fact is relevant, or how anything other than the temporal relationship between Lee's discharge and her report would indicate that Lee's discharge was also the result of retaliation.

Plaintiff discusses Harrison's affidavit, in which he opines that defendant "was searching for any reason to discipline [plaintiff] and then ultimately terminate her employment." Harrison, however, cites no factual basis for this opinion other than his similarly unsupported opinion that plaintiff's 30-day suspension was excessive. Harrison also states "that the claims made . . . against [plaintiff] were fabricated," including Espinoza's contention that plaintiff "improperly walked away from a meeting with her, or that [plaintiff] was insubordinate." His apparent basis for this opinion is that he "sat in on meetings involving the disciplinary actions taken against" plaintiff. However, Harrison does not claim any personal knowledge of the events, and does not claim to have witnessed any of plaintiff's interactions with Espinoza. Therefore, his opinion that Espinoza fabricated these events is baseless.

Harrison goes on to state his "opinion . . . that [plaintiff] was absolutely targeted after she filed her EEOC complaint . . . and that she was terminated because she filed her EEOC complaint . . . ." The basis for Harrison's opinion seems to be that he, too, filed an EEOC complaint, and he was terminated within a month. As explained, temporal proximity alone is not enough to establish causation. *West*, 469 Mich at 186. Therefore, Harrison's affidavit does not demonstrate that his *own* discharge was an act of retaliation. His opinion that plaintiff's discharge was an act of retaliation is pure conjecture. In sum, all of Harrison's purported opinions regarding the reason for plaintiff's discharge are merely unsupported, conclusory opinions that do not create a question of fact sufficient to survive summary disposition. *Kozak*, 499 Mich at 468; *SSC Assoc Ltd Partnership*, 192 Mich App at 364.

Plaintiff's final attempt to demonstrate causation stems from the discipline notice that informed plaintiff of her termination. Plaintiff again argues that the document contains a false statement when it states that plaintiff was asked to answer calls that were in the queue. Again, it is not disputed that no calls were in the queue at the moment plaintiff was asked to attend to the UBR line. But that was not the issue. The issue was that plaintiff refused to comply with a directive from her supervisor, Espinoza, to be available to take calls on that particular telephone line. The discipline notice, read as a whole, accurately depicts what occurred that day. No rational factfinder could conclude from the slight misstatement contained in the notice that the entire stated reason for discharging plaintiff was false, and that instead, her discharge was undertaken as retaliation for her filing of an EEOC claim. Accordingly, defendant is entitled to summary disposition with regard to plaintiff's claim of retaliation.

III. CONCLUSION

Plaintiff failed to present evidence sufficient to survive defendant's motion for summary disposition brought under MCR 2.116(C)(10). Therefore, we reverse the trial court's order and

remand for entry of an order granting summary disposition in favor of defendant.  We do not retain jurisdiction.[8]

/s/ Michael F. Gadola
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood

---

[8] Because of our resolution of the matter, we need not address the second issue raised by defendant on appeal involving the doctrine of collateral estoppel.