*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SAMUEL BALOGUN,

        Plaintiff-Appellant,

v

CITY OF DETROIT,

        Defendant-Appellee.

UNPUBLISHED
June 22, 2026
1:48 PM

No. 371070
Wayne Circuit Court
LC No. 22-008092-CD

Before: GADOLA, C.J., and RIORDAN and LETICA, JJ.

PER CURIAM.

Plaintiff appeals as of right the order granting defendant summary disposition under MCR 2.116(C)(8) (failure to state a claim for which relief can be granted) and (C)(10) (no genuine question of material fact). We affirm.

## I. FACTS

Plaintiff is a native of Nigeria. He was hired by the Detroit Police Department (DPD) in 2000. In 2015, he became a neighborhood police officer (NPO) in the department's Seventh Precinct. In 2018, plaintiff was the subject of an Internal Affairs investigation for telling Officer Tania Stribling, another NPO, that he would "fuck you and the commander up." On October 10, 2019, plaintiff then engaged in a verbal altercation with Officer Stribling where he told her to "shut the fuck up." Their supervisor, Sergeant Thomas Denmark, overheard and told plaintiff to apologize. If plaintiff did not, Sergeant Denmark said he would write him up again. After plaintiff refused, Sergeant Denmark left the NPO office to seek advice from Sergeant Velma Hampton. Officer Stribling alleged that while she was alone with plaintiff, he put his hands on or near her neck. Later that day, however, she clarified that she thought this was done in a playful or joking manner.

Sergeant Hampton initiated an Internal Affairs investigation based on Officer Stribling stating that plaintiff had choked her. This was prior to the time she clarified that she did not feel threatened. The day after the initiation of the investigation, plaintiff attempted to make a complaint with DPD's Equal Employment Opportunity (EEO) office. He was told that none of his complaints were within the office's jurisdiction. He returned to the EEO office on October 17, 2019, and

alleged that Sergeant Hampton had sexually harassed him. However, he also stated to the investigating officer, Sergeant Felicia Jewell, that he was "going after" Sergeant Hampton because he felt she was going after him. Following an investigation by Sergeant Jewell, no evidence of harassment was found.

In the meantime, the Internal Affairs investigation against plaintiff continued. Sergeant Dominic Davidson concluded that plaintiff had put his hands on Officer Stribling, lied about being alone in the NPO office with Officer Stribling, and lied about Sergeant Hampton asking Sergeant Denmark to lie. Sergeant Davidson recommended termination, a decision which Assistant Chief David LeValley endorsed following an internal hearing. Plaintiff then appealed his termination to arbitration. A neutral arbitrator found that there was insufficient evidence that plaintiff had put his hands on Officer Stribling, but sufficient evidence that plaintiff had lied about being alone with Officer Stribling in the NPO office. Under DPD policy, making an untrue statement was grounds for termination. Thus, plaintiff's termination was upheld.

On July 6, 2022, plaintiff filed a complaint against defendant for violation of the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq*. He made claims of employment discrimination, retaliation, and hostile work environment. The trial court granted defendant's motion for summary disposition on all claims. This appeal followed.

## II. DISCUSSION

Plaintiff argues that the trial court erred by granting defendant's motion for summary disposition because he successfully established claims of discrimination, retaliation, and hostile work environment under ELCRA. We disagree.

## A. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Given the trial court's reliance on evidence outside the pleadings, we review the trial court's decision under MCR 2.116(C)(10). *BC Tile & Marble Co, Inc v Multi Bldg Co, Inc*, 288 Mich App 576, 582; 794 NW2d 76 (2010). A motion under MCR 2.116(C)(10) examines the factual sufficiency of a claim. *El-Khalil*, 504 Mich at 160. The trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. The motion may only be granted if there is no genuine issue of material fact. *Id*. There is a genuine issue of material fact when "the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

## B. DISCUSSION

## 1. DISCRIMINATION

We first note that while plaintiff initially raised claims of discrimination on the basis of race, national origin, sex, and age, his argument on appeal does not include a claim of discrimination on the basis of age. Issues not briefed are deemed abandoned on appeal. *Greater Bethesda Healing Springs Ministry v Evangel Builders & Constr Managers, LLC*, 282 Mich App

410, 413; 766 NW2d 874 (2009). Thus, we do not address the question of whether defendant established a claim of discrimination on the basis of age.

Under ELCRA, an employer shall not "[f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status." MCL 37.2202(1)(a), as amended by 2009 PA 190.[1]

Discrimination may be established by direct or circumstantial evidence. *Sniecinski v Blue Cross & Blue Shield of Mich*, 469 Mich 124, 132-133; 666 NW2d 186 (2003). Direct evidence is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Id*. at 133 (quotation marks and citations omitted).

In an ELCRA case in which the plaintiff does not submit direct evidence of unlawful discrimination, and the plaintiff does not otherwise submit circumstantial evidence on the matter, the plaintiff must establish a prima facie case of discrimination under the *McDonnell Douglas*[2] burden-shifting framework. *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 607-608; 886 NW2d 135 (2016); *White v Dep't of Trans*, 334 Mich App 98, 107; 964 NW2d 88 (2020). Under that framework, plaintiffs must show that (1) they belong to a protected class, (2) they suffered an adverse employment action, (3) they were qualified for the position, and (4) the adverse-employment action occurred under circumstances giving rise to an inference of unlawful discrimination. *Lytle v Malady (On Rehearing)*, 458 Mich 153, 172-173; 579 NW2d 906 (1998). If the plaintiff shows a prima facie case, "[t]he burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for plaintiff's termination to overcome and dispose of this presumption." *Id*. (quotation marks and citation omitted).

With regard to the fourth element of the prima facie case, the plaintiff must "present evidence that the employer's actions, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Hazle v Ford Motor Co*, 464 Mich 456, 470-471; 628 NW2d 515 (2001) (quotation marks and citation omitted). For example, evidence that a black woman "was rejected [for a position] in favor of a less qualified white applicant" would give rise to an inference of unlawful discrimination. *Id*. Relatedly, the plaintiff may prove the fourth element by showing that he or she was treated unequally when compared to a similarly situated employee without the same protected characteristic. *Hecht*, 499 Mich at 608. "An employer's differing treatment of employees who were similar to the plaintiff in all relevant respects, except for their race, can give rise to an inference of unlawful discrimination." *Id*. "In order for this type of 'similarly situated' evidence alone to give rise to such an inference, however, our cases have held that the comparable employees must be nearly identical to the plaintiff in all relevant respects." *Id*. (some quotation marks and citation omitted).

---

[1] We apply the version of the statute in effect when the relevant events occurred. The statute was amended in 2023 and 2024, see 2023 PA 6 and 2024 PA 31, but those amendments are not relevant for our purposes.

[2] *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973).

In the case before us, plaintiff does not allege that there was direct evidence of discrimination or otherwise present circumstantial evidence on the matter. Thus, plaintiff is required to proceed under the *McDonnell Douglas* framework. See *White*, 334 Mich App at 107. Plaintiff and defendant agree that plaintiff belonged to a protected class (i.e., his race, national origin, and sex), that he suffered an adverse employment action, and that he was qualified for his position as an NPO. In other words, the parties do not dispute that plaintiff has satisfied three of the four elements of establishing a prima facie case of discrimination. *Lytle*, 458 Mich at 172-173. The parties only dispute whether plaintiff's employment was terminated under circumstances giving rise to an inference of unlawful discrimination. *Id*. Plaintiff argues that unlawful discrimination occurred because he was terminated for making an untruthful statement whereas Officer Stribling, Sergeant Denmark, and Sergeant Hampton were not terminated for making untruthful statements. In other words, plaintiff argues, he was treated differently than those other three similarly situated officers.

Plaintiff has failed to show that a jury could infer unlawful discrimination from these facts. See *Hazle*, 464 Mich at 470-471. Plaintiff asserts a multitude of lies: (1) Officer Stribling lied because Sergeant Hampton stated Officer Stribling lied; (2) Sergeant Denmark lied because Officer Stribling said Sergeant Denmark lied; and (3) Sergeant Hampton lied because Sergeant Denmark said Sergeant Hampton lied. Therefore, plaintiff contends, because he was treated differently from those other three allegedly lying officers during the course of the investigation, the record creates an inference that he was fired because of his African national origin, which the other three presumably did not share.[3]

Considering the evidence presented in the light most favorable to plaintiff, we disagree. Plaintiff affirmatively stated several times during the investigation that he was never alone in the room with Officer Stribling. Sergeant Hampton, Sergeant Denmark, and Officer Stribling said that statement is untrue. Plaintiff made the statements at a time he knew that he was being investigated for misconduct, part of which involved him having the opportunity to place his hands near Officer Stribling's neck. By insisting on the point that he never was in a room alone with Officer Stribling, plaintiff plainly hoped to escape punishment for making unconsented contact with her. During the arbitration, however, plaintiff admitted that he had been alone in the room with Officer Stribling, a clear change of position from his earlier statements.

We disagree with plaintiff that the record establishes that Officer Stribling lied about being choked. Admittedly, Sergeant Hampton stated almost two years after the incident that Officer Stribling had lied about plaintiff choking her. However, in the same deposition, Sergeant Hampton was unable to recall that Officer Stribling clarified the same day that plaintiff was joking. The fact that Sergeant Hampton said Officer Stribling lied does not prove that Officer Stribling actually misrepresented her interactions with plaintiff. It was uncontested that Officer Stribling initially said that plaintiff choked her or grabbed her, and then clarified later the same day that she did not think he was acting in a threatening manner. Officer Stribling's overall assertion about plaintiff

---

[3] We note that plaintiff has provided no evidence of Sergeant Hampton's and Sergeant Denmark's national origins. Defendant concedes that Officer Stribling does not share the same national origin as plaintiff.

-4-

placing his hands near her neck remained consistent. If plaintiff placed his hands on or near Officer Stribling's neck, her characterization of it as "choking" is not misleading, even if plaintiff was not attempting to actually strangle Officer Stribling.

We also disagree that the record shows that Sergeant Hampton and Sergeant Denmark lied about whether Sergeant Denmark was present for the conversation between Officer Stribling and Sergeant Hampton a few hours after the incident. Officer Stribling stated almost two years after the incident that Sergeant Denmark was present when she spoke with Sergeant Hampton. Plaintiff asserts that this is proof that Sergeant Denmark lied because Sergeant Denmark denied during his deposition that he was present for this conversation. Plaintiff also asserts that Sergeant Hampton lied because she stated that Sergeant Denmark was present as well.

It is true that Sergeant Denmark's recollection of the meeting varied from Sergeant Hampton and Officer Stribling, both of whom recalled Sergeant Denmark being nearby. Thus, it is unclear where exactly the conversation occurred or whether Sergeant Denmark was present. This Court does not weigh conflicting evidence on summary disposition. *Hastings Mut Ins Co v Grange Ins Co of Mich*, 319 Mich App 579, 583-584; 903 NW2d 400 (2017). Either Sergeant Denmark, or Sergeant Hampton and Officer Stribling, were mistaken, but there is no evidence such as video footage that established where the conversation between Sergeant Hampton and Officer Stribling occurred. Sergeant Denmark remained consistent in his recall that he was not present, except for his statement that he did not remember when asked two years after the incident, and Sergeant Hampton remained consistent in her memory that Sergeant Denmark was present. Forgetting is not the same as intentionally lying. There is no evidence that either of them, or Officer Stribling, was outright lying when recounting their memories of the conversation at issue.

Thus, when considering the evidence in the light most favorable to plaintiff, there is no evidence that Officer Stribling, Sergeant Hampton, or Sergeant Denmark lied during the course of the investigative proceedings. See *El-Khalil*, 504 Mich at 159. Consequently, because plaintiff has not identified a similarly situated individual who does not share one or more of his protected characteristics, plaintiff has not presented evidence that would allow a jury to infer that defendant's reasons for terminating him were based on unlawful discrimination. *Hazle*, 464 Mich at 470-471.

Plaintiff also ignores that Officer Stribling, Sergeant Denmark, and Sergeant Hampton were not under investigation as was plaintiff. For this additional reason, they were not similarly situated to plaintiff and thus cannot serve as comparison points. See *Hecht*, 499 Mich at 608. Plaintiff argues that all witnesses in an Internal Affairs investigation have the same duty of truthfulness and therefore the fact that these witnesses were not being investigated is irrelevant to whether they can serve as comparison points. It is uncontested that Officer Stribling, Sergeant Denmark, and Sergeant Hampton had the same duty of truthfulness during the Internal Affairs investigation. However, the fact that plaintiff was under investigation by Internal Affairs was part of the disciplinary proceedings that eventually led to his dismissal. Plaintiff lied about his location, seemingly in an attempt to escape punishment for making nonconsensual contact with Officer Stribling. The investigation was a highly relevant aspect of his employment which was not applicable to the other officers to whom he compares himself. *Id*. Additionally, as discussed above, plaintiff has not shown that the other officers lied during the course of his investigation. Therefore, they were not similarly situated because they had not engaged in the same, or closely similar, conduct as plaintiff. *Id*.; see also *Town v Mich Bell Tel Co*, 455 Mich 688, 699-700; 568

NW2d 64 (1997) (holding that employees were not similarly situated when one sold enough product to cover her salary and one failed to do so).

Plaintiff alternatively argues that Sergeant Denmark treated him differently on the basis of his sex because Officer Stribling also had engaged in conduct unbecoming of an officer and was not written up. He claims that discrepancy was because Officer Stribling is female, and he is male. However, this again ignores a significant difference between plaintiff and Officer Stribling, specifically, that plaintiff previously had been written up for swearing at Officer Stribling. This was considered plaintiff's second offense. Plaintiff was told to apologize and refused, stating that he would accept the second write-up. There is no evidence that Officer Stribling had been previously disciplined for swearing at another NPO or that she was asked to apologize to plaintiff and refused. Sergeant Denmark stated that he felt plaintiff's behavior was a more serious issue. Thus, considering the evidence in the light most favorable to plaintiff, Officer Stribling was not similarly situated to plaintiff, such that Sergeant Denmark's decision not to write her up created an inference of unequal treatment. See *Hecht*, 499 Mich at 608.

For these reasons, plaintiff has failed to establish a prima facie case of discrimination because there is no genuine issue of material fact regarding the fourth element of the *McDonnell Douglas* test, i.e., that he was discharged under circumstances giving rise to an inference of unlawful discrimination. See *Lytle*, 458 Mich at 172-173. Therefore, the trial court did not err by granting defendant's motion for summary disposition of plaintiff's discrimination claim.

## 2. RETALIATION

Next, plaintiff argues that the trial court erred by granting defendant summary disposition of his retaliation claim. We disagree.

Under ELCRA, a person shall not "[r]etaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." MCL 37.2701(a). To establish a prima facie case of retaliation, a plaintiff must prove the following elements: "(1) that he engaged in a protected activity; (2) that this was known by the defendant, (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *El-Khalil*, 504 Mich at 161 (quotation marks and citation omitted). "To establish causation, the plaintiff must show that his participation in activity protected by the [EL]CRA was a significant factor in the employer's adverse employment action, not just that there was a causal link between the two." *Barrett v Kirtland Comm College*, 245 Mich App 306, 315; 628 NW2d 63 (2001) (quotation marks and citations omitted), superseded in part on other grounds by *Maldonado v Ford Motor Co*, 476 Mich 372; 719 NW2d 809 (2006). Circumstantial evidence may be used to establish a causal connection, "as long as the evidence would enable a reasonable fact-finder to infer that an action had a discriminatory or retaliatory basis." *Rymal v Baergen*, 262 Mich App 274, 303; 686 NW2d 241 (2004).

Filing an EEO complaint constitutes a protected activity. See *El-Khalil*, 504 Mich at 161. Defendant presumptively was aware that plaintiff had filed the EEO complaint. *Id*. Next, plaintiff was terminated, which both parties agree was an adverse-employment action. *Id*. However,

plaintiff has failed to establish a causal connection between his EEO complaint and his discharge. *Id*. Plaintiff attempted to file a complaint on October 11, 2019, shortly after the Internal Affairs investigation began, but was told that his complaint did not constitute a matter for the EEO office. He then filed another EEO complaint on October 17, 2019, several days after the Internal Affairs investigation eventually leading to his termination began.

The filing of the EEO complaint was not a significant factor in defendant's decision to investigate plaintiff because the EEO complaint had not yet been filed when the investigation was initiated. See *Barrett*, 245 Mich App at 315. When Sergeant Denmark mentioned the EEO complaint during his *Garrity* interview,[4] he was informed that it was a separate process, and the Internal Affairs investigators did not want to discuss the EEO complaint. More importantly, Sergeant Davidson was clear that once an Internal Affairs investigation began, it had to be completed. Thus, the investigation was not continued because plaintiff filed an EEO complaint, but because that was standard procedure. This shows that the internal investigation and, as explained, eventual decision to terminate plaintiff was not motivated by retaliation for the filing of an EEO complaint but, rather, by legitimate employment reasons.

Plaintiff contends that the fact that the investigation occurred after Officer Stribling said that plaintiff did not try to strangle her is evidence of retaliation. However, Sergeant Davidson stated that a claim of any unwanted touching would be considered workplace violence and require an investigation. Internal Affairs already had been alerted at this point, and again, it was standard procedure for the investigation to be conducted and completed. Thus, plaintiff has not established any causal connection between his EEO complaint and his eventual discharge. The trial court did not err by granting summary disposition to defendant on plaintiff's claim of retaliation.

### 3. HOSTILE WORK ENVIRONMENT

Finally, plaintiff claims that he was subject to a hostile work environment on the basis of his national origin.[5] We disagree.

"Harassment based on any of the enumerated classifications in MCL 37.2202(1)(a) is an actionable offense." *Major v Village of Newberry*, 316 Mich App 527, 549; 892 NW2d 402 (2016). As noted, national origin is one such classification under MCL 37.2202(1)(a).

There is a three-year statute of limitations for ELCRA claims. *Garg v Macomb Co Comm Mental Health*, 472 Mich 263, 284-285; 696 NW2d 646 (2005). However, "acts occurring outside the limitations period, though not actionable, may, in appropriate cases, be used as background

---

[4] *Garrity v New Jersey*, 385 US 493; 87 S Ct 616; 17 L Ed 2d 562 (1967). Under *Garrity*, "self-incriminatory statements from a law-enforcement officer procured under the threat of discharge [cannot] be used in subsequent criminal proceedings against the declarant." *People v Brown*, 279 Mich App 116, 142; 755 NW2d 664 (2008).

[5] On appeal, plaintiff only raises the issue of hostile work environment based on his national origin. Therefore, we do not consider sex, race, or color as other hostile-environment grounds. See *Greater Bethesda Healing Springs Ministry*, 282 Mich App at 413.

evidence to establish a pattern of discrimination." *Campbell v Dep't of Human Servs*, 286 Mich App 230, 238; 780 NW2d 586 (2009).

To establish a prima facie case of a hostile work environment, a plaintiff must prove the following elements:

> (1) the employee belonged to a protected group; (2) the employee was subject to communication or conduct on the basis of the protected status; (3) the employee was subjected to unwelcome conduct or communication on the basis of the protected status; (4) the unwelcome conduct or communication was intended to, or in fact did, interfere substantially with the employee's employment or created an intimidating, hostile, or offensive work environment; and (5) respondeat superior. [*Major*, 316 Mich App at 550 (quotation marks and citation omitted).]

Here, it is uncontested that plaintiff was part of a protected group on the basis of his national origin, thus satisfying the first element. With regard to the second, third, and fourth elements, plaintiff alleges that he was subject to comments from Ron Thomas, the vice president of the Detroit Police Officers Association (DPOA), and Sergeant Hampton on the basis of his national origin, as well as various unnamed colleagues. Thomas, as the vice president of the DPOA, was not acting as an employee of defendant. Thus, any comments made by Thomas, in his capacity as a union vice president, would not support a claim of a hostile work environment against defendant, the employer. See MCL 37.2202(1). Plaintiff said Sergeant Hampton called him a "mandingo,"[6] saying he could use a blow arrow, and making fun of his accent. Plaintiff could not recall Sergeant Hampton making any comments about his accent after she was transferred from serving as the NPO sergeant, which occurred in 2016. Plaintiff provides vague dates for the other alleged statements, such as before Sergeant Hampton was transferred and 2017 or 2018. Because plaintiff filed his complaint in this case on July 6, 2022, the applicable three-year statute-of-limitations date for his claims is July 6, 2019. See *Garg*, 472 Mich at 284-285. Thus, none of the comments allegedly made by Sergeant Hampton are directly actionable under ELCRA.

Regardless, plaintiff, Officer Stribling, Sergeant Denmark, and Sergeant Hampton all acknowledged that plaintiff was subject to repeated comments and teasing because of his accent. Plaintiff stated that he was bothered by people making fun of his accent. Thus, plaintiff has established that he was subject to unwelcome commentary based on his national origin, satisfying the second and third elements of the prima facie case of hostile work environment. See *Major*, 316 Mich App at 550.

Concerning the fourth element, to determine whether a hostile work environment was created, the question is "whether a reasonable person, in the totality of the circumstances, would have perceived the conduct at issue as substantially interfering with the plaintiff's employment or

---

[6] Presumably a reference to the 1975 film *Mandingo*, in which "[a] 1840s slaveowner trains one of his slaves to be a bare-knuckle fighter." IMDB, *Mandingo* <https://www.imdb.com/title/tt0073349/?ref_=nv_sr_srsg_0_tt_5_nm_3_in_0_q_mandingo> (accessed June 3, 2026).

having the purpose or effect of creating an intimidating, hostile, or offensive employment environment." *Id*. (quotation marks and citation omitted). "Conclusory allegations devoid of detail are not sufficient to permit the conclusion that there was such conduct or communication of a type or severity that a reasonable person could find that a hostile work environment existed." *Id*. (cleaned up). Courts should consider all relevant facts, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Quinto v Cross & Peters Co*, 451 Mich 358, 370 n 9; 547 NW2d 314 (1996) (quotation marks and citation omitted). Moreover, it is a relevant fact if the "plaintiff himself engaged in the type of conduct similar to that at issue in the case." *Peña v Ingham Co Road Comm'n*, 255 Mich App 299, 305; 660 NW2d 351 (2003).

The comments made to plaintiff certainly were in poor taste. However, plaintiff has not established that he was subject to a hostile work environment based on these alleged facts. The most detail provided regarding the comments about plaintiff's accent were that some officers would mimic how plaintiff said certain things or ask if plaintiff understood what they were saying. Plaintiff's allegations are otherwise devoid of any details, including which officers made comments and the frequency of the comments. Sergeant Hampton stated that comments were made "once in a while." Officer Stribling stated the comments were "sporadic, here and there." Sergeant Denmark described the comments as "often." Plaintiff stated he was "constantly" mocked for his accent. Thus, the actual frequency of the mocking was unclear.

Further, Sergeant Denmark stated that he had asked plaintiff if he was bothered by comments on his accent. Plaintiff said he was not bothered, but not everyone could joke with him about his accent. Officer Stribling said that plaintiff would joke around and call other officers "dumb Americans". Sergeant Hampton also said that plaintiff would joke around with and make fun of other officers in the same interaction in which they were commenting on his accent. The fact that plaintiff engaged in jokes based on national origin weighs against his claim that there was a hostile work environment against him. See *Peña*, 255 Mich App at 304. Moreover, there is no evidence that the comments were ever threatening or interfered with plaintiff's work performance. See *Quinto*, 451 Mich at 370 n 9. Even considering this evidence in the light most favorable to plaintiff, his allegations are too conclusory to demonstrate a hostile work environment. See *Major*, 316 Mich App at 550. This is particularly true in light of the fact that plaintiff told Sergeant Denmark that he was not bothered by the comments, and there is nothing to suggest that plaintiff complained to his superiors about the comments throughout the years.[7]

---

[7] Compare *Lynch v City of Des Moines*, 454 NW2d 827, 834 (Iowa, 1990) ("The City first argues that Lynch was not subjected to *unwelcome* sexual harassment because there was evidence that Lynch herself voluntarily engaged in 'raw sexual banter' with her fellow officers, often using the same crass language she now claims to have found offensive. . . . [However], it also shows that she repeatedly indicated to T. Lynch, Nielsen, and her superiors that this state of affairs was offensive and unacceptable.") (emphasis in original).

For these reasons, plaintiff has not established a prima facie case of hostile work environment. The trial court did not err by granting defendant's motion for summary disposition of this claim.

## III. CONCLUSION

The trial court correctly granted summary disposition in favor of defendant. Therefore, we affirm.

/s/ Michael F. Gadola
/s/ Michael J. Riordan
/s/ Anica Letica